[S.F. No. 24084. Aug. 25, 1980.]

STEPHEN H. MOLIEN, Plaintiff and Appellant, v.
KAISER FOUNDATION HOSPITALS et al.,
Defendants and Respondents.

COUNSEL

Herbert W. Yanowitz for Plaintiff and Appellant.

Wylie Aitken, Robert E. Cartwright, Edward I. Pollock, Glen T. Bashore, Stephen I. Zetterberg, J. Nick DeMeo, Sanford M. Gage, Stephen I. Odgers, Harvey R. Levine, Leonard Sacks, Joseph Posner and Arne Werchick as Amici Curiae on behalf of Plaintiff and Appellant.

McNamara, Lewis, Dodge & Houston, Richard E. Dodge, Robert M. Slattery and Paul M. Hoff for Defendants and Respondents.

OPINION

MOSK, J.—To what extent should the law permit recovery of damages for the negligent infliction of emotional or mental distress unaccompanied by physical injury? We consider this question in two contexts, both presented by an action charging defendants with erroneously diagnosing plaintiff's wife as suffering from an infectious social disease.

Appealing from a judgment entered after a demurrer was sustained, plaintiff asks us to decide whether he may recover for negligently in-

flicted emotional distress and for loss of consortium, occasioned by emotional injury to his wife. As will appear, in the light of contemporary knowledge we conclude that emotional injury may be fully as severe and debilitating as physical harm, and is no less deserving of redress; the refusal to recognize a cause of action for negligently inflicted injury in the absence of some physical consequence is therefore an anachronism. We further conclude that it is no less regressive to deny recovery for loss of consortium simply because the plaintiff's spouse has suffered a disabling but nonphysical injury. Accordingly, the judgment must be reversed and plaintiff permitted to go to trial.

Plaintiff Stephen H. Molien filed this action against Kaiser Foundation Hospitals (Kaiser) and Thomas Kilbridge, M.D. (Kaiser and Dr. Kilbridge are hereafter sometimes referred to collectively as defendants.) The amended complaint sets forth two causes of action. In determining its sufficiency against a demurrer we are guided by long-settled precepts: "that a general demurrer admits the truth of all material factual allegations in the complaint [citation]; that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court [citations]; and that plaintiff need only plead facts showing that he may be entitled to some relief [citation]." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

The principal allegations of the first cause of action are as follows: Plaintiff and his wife, Valerie G. Molien, are members of the Kaiser Health Plan. Mrs. Molien went to Kaiser for a routine multiphasic physical examination. There, Dr. Kilbridge, a Kaiser staff physician, negligently examined and tested her, and subsequently advised her she had contracted an infectious type of syphilis. The diagnosis was erroneous, as she did not in fact have the disease. Nevertheless she was required to undergo treatment for syphilis, including the administration of massive and unnecessary doses of penicillin. As a result of defendants' conduct she suffered "injury to her body and shock and injury to her nervous system."

Defendants knew plaintiff husband would learn of the diagnosis, as they instructed Mrs. Molien to so advise him. Thereafter plaintiff was required to undergo blood tests himself in order to ascertain whether he had contracted syphilis and was the source of his wife's purported infection. The tests revealed that he did not have the disease.

As a result of the negligently erroneous diagnosis, plaintiff's wife became upset and suspicious that he had engaged in extramarital sexual activities; tension and hostility arose between the two, "causing a break-up of their marriage and the initiation of dissolution proceedings."

Defendants knew or should have known their diagnosis that plaintiff's wife had syphilis and that he might also have the disease would cause him emotional distress. He has in fact suffered "extreme emotional distress" as a result of the negligent misdiagnosis. Additionally, he has incurred medical expenses for counseling in an effort to save the marriage.

The second cause of action, after incorporating by reference all the allegations of the first, alleges that as a consequence of defendants' acts plaintiff has been deprived of the "love, companionship, affection, society, sexual relations, solace, support, and services" of his wife.

The prayer is for damages for mental suffering and loss of consortium, together with medical expenses. The trial court sustained general demurrers to both causes of action, and plaintiff appealed from the ensuing judgment of dismissal.

## I

At the outset we consider a procedural issue arising from the fact that on its face the judgment purports to dismiss only the first cause of action, i.e., for mental suffering. In its ruling the court sustained the demurrers to both causes of action, with leave to amend the first cause and without leave to amend the second. When plaintiff failed to amend, the court ordered the first cause of action dismissed; the judgment is silent, however, as to the second.

Defendants contend we are without jurisdiction to review plaintiff's purported appeal from the order sustaining the demurrer to the second cause of action, i.e., for loss of consortium. They correctly assert that such an order is neither appealable per se nor as a final judgment. (*Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 [23 Cal.Rptr. 189].) ■ Plaintiff responds, however, that "in the interest of justice and to prevent further delay" an appellate court may deem an order sustaining a demurrer to incorporate a judgment of dismissal. (*Bellah* v.

*Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1 [146 Cal.Rptr. 535].) He requests that we amend the judgment of dismissal herein to apply to both causes of action, as the trial court intended.

Plaintiff's request is reasonable and finds authority in our recent decision in *Tenhet* v. *Boswell* (1976) 18 Cal.3d 150 [133 Cal.Rptr. 10, 554 P.2d 330]. In *Tenhet*, as here, the trial court failed to dispose of all causes of action set forth in the amended complaint. Ordinarily in that event appeal would be barred by the "one final judgment" rule, i.e., "an appeal may be taken only from the final judgment in an entire action." (*Id.* at p. 153.) But we noted with approval the disposition adopted in *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933]: there the court amended the judgment to include a dismissal of a cause of action as to which a demurrer had been sustained. We found such procedure appropriate when "the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial." (18 Cal.3d at p. 154.)

In the present case it is evident that the failure of the court to dismiss the cause of action for loss of consortium was an oversight. We may therefore treat the dismissal as applying to both causes of action, and we amend the judgment accordingly.

## II

We turn now to the merits of the appeal and first address plaintiff's contention that he has stated a cause of action for the negligent infliction of emotional distress. Defendants maintain this issue is governed by *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [60 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; they emphasize that plaintiff was not present when the doctor announced the erroneous diagnosis, but learned of it later from his wife. As we shall explain, however, defendants rely too heavily on *Dillon*: the case is apposite, but not controlling.

### A

In *Dillon* a mother sought damages for emotional trauma and physical injury that resulted when she witnessed the negligently inflicted death of her infant daughter. The defendant contended he owed no duty to the mother because she was outside the zone of physical danger at the time of the accident. But the traditional duty approach, we ex-

plained, begged the question whether the plaintiff's interests were entitled to legal protection; the finding of a duty was simply "'a shorthand statement of a conclusion, rather than an aid to analysis in itself.'" (68 Cal.2d at p. 734.) We therefore identified forseeability of the risk as the critical inquiry: "In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable." (*Id.* at p. 739.) And the foreseeable risk may entail not only actual physical impact, but emotional injury as well. (*Id.* at pp. 739-740 & fn. 5.)

Confining our analysis to the situation in which a plaintiff's emotional shock caused by harm to a third person ripened into a physical injury, we listed three factors bearing on the determination whether the defendant should reasonably have foreseen injury to the plaintiff: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Id.* at pp. 740-741.)

Consideration of these factors, we said, would enable the court to decide "whether the accident and harm [were] *reasonably* foreseeable. Such reasonable foreseeability does not turn on whether the particular [defendant] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." (*Id.* at p. 741.) Applying these principles and noting the presence of all three of the above factors, we concluded: "Surely the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." (*Ibid.*)

It must be remembered, however, that in *Dillon* the plaintiff sought recovery of damages she suffered as a percipient witness to the injury of a third person, and the three guidelines there noted served as a limita-

tion on that particular cause of action. (See, e.g., *Justus v. Atchison* (1977) 19 Cal.3d 564, 582-585 [139 Cal.Rptr. 97, 565 P.2d 122].) Here, by contrast, plaintiff was himself a direct victim of the assertedly negligent act. By insisting that the present facts fail to satisfy the first and second of the *Dillon* criteria, defendants urge a rote application of the guidelines to a case factually dissimilar to the bystander scenario. In so doing, they overlook our explicit statement in *Dillon* that an obligation hinging on foreseeability "must necessarily be adjudicated only on a case-by-case basis. . . . [N]o immutable rule can establish the extent of that obligation for every circumstance in the future." (68 Cal.2d at p. 740.)

Hence the significance of *Dillon* for the present action lies not in its delineation of guidelines fashioned for resolution of the precise issue then before us; rather, we apply its general principle of foreseeability to the facts at hand, much as we have done in other cases presenting complex questions of tort liability. (See, e.g., *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434-435 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399-400 [115 Cal.Rptr. 765, 525 P.2d 669].)

In the case at bar the risk of harm to plaintiff was reasonably foreseeable to defendants. It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; Dr. Kilbridge's advice to Mrs. Molien to have her husband examined for the disease confirms that plaintiff was a foreseeable victim of the negligent diagnosis. Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity.

We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife. There remains the question whether plaintiff is barred from recovery by the fact that he suffered no physical injury.

B

As observed in *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 935 [122 Cal.Rptr. 470], "California courts have attempted to resolve the public policy problems inherent in mental distress cases in a variety of ways." Whether legal protection should extend to the interest in emotional tranquility has been a subject of controversy not only in California, but elsewhere: "No general agreement has yet been reached as to the liability for negligence resulting in fright, shock, or other 'mental suffering,' or its physical consequences." (Prosser, Torts (4th ed. 1971) § 54, p. 327.) The issue, not novel, has inspired numerous and substantial scholarly expositions since the turn of the century. (See, e.g., materials collected in Prosser, *op. cit. supra*, at p. 50, fn. 27 & p. 327, fn. 31; 1 Dooley, Modern Tort Law (1977) § 15.07, p. 323, fn. 36; 2 Harper & James, The Law of Torts (1956) § 18.4, pp. 1031-1032, fn. 1.)

As early as 1896, this court recognized that mental suffering "constitutes an aggravation of damages when it naturally ensues from the act complained of." (*Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668, 680 [44 P. 320].) But such suffering alone, we said, would not afford a right of action. (*Ibid.*) We pondered the question whether a nervous disorder suffered by the plaintiff after she was wrongfully put off a train was a physical or a mental injury: "The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism. It is a matter of general knowledge that an attack of sudden fright or an exposure to imminent peril has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected." (*Ibid.*)

The foundation was thus laid, nearly a century ago, for two beliefs that have since been frequently reiterated: first, recovery for emotional distress must be relegated to the status of parasitic damages; and second, mental disturbances can be distinctly classified as either psychological or physical injury. That medical science and particularly the field of mental health have made much progress in the 20th century is

manifest; yet, despite some noteworthy exceptions, the principles underlying the decision in *Sloane* still pervade the law of negligence.

The present state of the law is articulated in BAJI No. 12.80 (6th ed. 1977): "There can be no recovery of damages for emotional distress unaccompanied by physical injury where such emotional distress arises only from negligent conduct. [¶] However, if a plaintiff has suffered a shock to the nervous system or other physical harm which was proximately caused by negligent conduct of a defendant, then such plaintiff is entitled to recover damages from such a defendant for any resulting physical harm and emotional distress."

The BAJI language appears to be derived mainly from the opinions in *Vanoni* v. *Western Airlines* (1967) 247 Cal.App.2d 793, 795-797 [56 Cal.Rptr. 115], and *Espinosa* v. *Beverly Hospital* (1952) 114 Cal.App. 2d 232, 234 [249 P.2d 843], both of which relied on *Sloane*. The principle has been reiterated elsewhere, but in each instance is traceable either directly or indirectly to *Sloane*. (See, e.g., *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 168 [136 Cal.Rptr. 275]; *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 381 [121 Cal.Rptr. 768]; *Gautier* v. *General Telephone Co.* (1965) 234 Cal.App.2d 302, 307 [44 Cal.Rptr. 404].) It therefore appears the rule has been immutable since its early origin, with virtually no regard for the factual contexts in which claims arose, or the alleged causes of emotional distress, or the prevailing state of medical knowledge.

Plaintiff urges that we recognize the concept of negligent infliction of emotional distress as an independent tort. In this inquiry we first seek to identify the rationale for the *Sloane* rule. None appears in the opinion, possibly because the court classified the plaintiff's condition, "nervous paroxysm," as a physical injury, and hence had no need to justify a denial of recovery for psychological injury alone. Neither did the *Espinosa* court provide any justification for its rejection of the plaintiff's attempt to "subvert the ancient rule that mental suffering alone will not support an action for damages based upon negligence." (114 Cal.App.2d at p. 234.) Therefore, we must look elsewhere.

The primary justification for the requirement of physical injury appears to be that it serves as a screening device to minimize a presumed risk of feigned injuries and false claims. (See, e.g., Prosser, *op. cit. supra*, at p. 328; 1 Dooley, *op. cit. supra*, at p. 319; Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort*

(1971) 59 Geo.L.J. 1237, 1244; Rest.2d Torts, § 436A, com. b.) Such harm is believed to be susceptible of objective ascertainment and hence to corroborate the authenticity of the claim.

Although most courts still adhere to the early view, the scholars assert that such artificial barriers to recovery are unnecessary. Thus Dean Prosser explains that "the difficulty is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem is one of proof, and it will not be necessary to deny a remedy in all cases because some claims may be false." (Prosser, *op. cit. supra*, at p. 328; see also 1 Dooley, *op. cit. supra*, at p. 319.)

The foregoing analysis was expressly adopted by the New York Court of Appeals when it held that "Freedom from mental disturbance is now a protected interest in this State." (*Ferrara* v. *Galluchio* (1958) 5 N.Y.2d 16 [176 N.Y.S.2d 996, 999, 152 N.E.2d 249, 71 A.L.R.2d 331].) The case involved a medical malpractice action brought by a patient who, after receiving negligently administered X-ray treatments from the defendants, consulted a dermatologist who advised her to exercise certain precautions because the area of the X-ray burn might become cancerous. The plaintiff alleged she developed a severe "cancerphobia" and sought damages for mental anguish. In affirming a jury verdict for the plaintiff, the New York high court deemed it "entirely plausible, under such circumstances, that plaintiff would undergo exceptional mental suffering over the possibility of developing cancer." (*Id.* at p. 1000; see also *Johnson* v. *State* (1975) 37 N.Y.2d 378 [372 N.Y.S.2d 638, 643, 334 N.E.2d 590], in which the court held that "recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a 'guarantee of genuineness' to which the court referred in the *Ferrara* case [citations].")

*Ferrara* represents a view not generally followed in California. Our courts have instead devised various means of compensating for the infliction of emotional distress, provided there is some assurance of the validity of the claim. As we have seen, physical injury, whether it occurs contemporaneously with or is a consequence of emotional distress,

provides one such guarantee. (*Capelouto* v. *Kaiser Foundation Hospital* (1972) 7 Cal.3d 889, 892-893 [103 Cal.Rptr. 856, 500 P.2d 880]; *Vanoni* v. *Western Airlines, supra,* 247 Cal.App.2d at pp. 795-797.) Another arises when the plaintiff asserts an independent cause of action apart from personal injury. Thus in a suit against an insurer for damages resulting from its wrongful refusal to settle a claim against the insured within the policy limits, the plaintiff was permitted to recover for mental distress as well as for pecuniary loss. We concluded: "Obviously, where, as here, the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced, and we are not here concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests." (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 434 [58 Cal.Rptr. 13, 426 P.2d 173]; accord, *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 579 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Jarchow* v. *Transamerica Title Ins. Co., supra,* 48 Cal.App.3d at p. 937; *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App. 3d 844 [88 Cal.Rptr. 39].)

Finally, intentional torts will support an award of damages for emotional distress alone, but only in cases involving "extreme and outrageous intentional invasions of one's mental and emotional tranquility." (*Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d at p. 498.) As we explained in *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 338 [240 P.2d 282], it is the outrageous conduct that serves to insure that the plaintiff experienced serious mental suffering and convinces the courts of the validity of the claim.

We thus reach the crucial question whether continued adherence to the venerable rule that would bar recovery in this case is warranted. Although we recognize a need to guard against fraudulent claims, we are not persuaded that the presently existing artificial lines of demarcation are the only appropriate means of attaining this goal. As observed by Presiding Justice Gardner in his concurring opinion in *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 216 [163 Cal.Rptr. 445], "In no other area are the vagaries of our law more apparent than in the distinction between mental and emotional distress accompanied by physical manifestation and such discomfort unaccompanied by physical manifestation."

The Hawaii Supreme Court confronted the issue forthrightly and discarded the traditional rule that there can be no recovery for the negligent infliction of emotional distress alone. (*Rodrigues* v. *State*

(1970) 52 Hawaii 156, 283 [472 P.2d 509].) It explained that "Courts which have administered claims of mental distress incident to an independent cause of action are just as competent to administer such claims when they are raised as an independent ground for damages." (*Id.* at p. 519.) Moreover, defendants will not be exposed to potentially unlimited liability for invasions of emotional tranquility that are trivial and transient if recovery is limited to claims of serious mental distress. The court therefore adopted as its standard: "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." (*Id.* at p. 520.)

The *Rodrigues* court further noted the "multiplication of psychic stimuli" that society presently faces, and the "increasing widespread knowledge of the debilitating effect mental distress may have on an individual's capacity to carry on the functions of life." (*Ibid.*) Accordingly, the court recognized that "the interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection. We hold, therefore, that there is a duty to refrain from the negligent infliction of serious mental distress." (*Ibid.*)[1]

We agree that the unqualified requirement of physical injury is no longer justifiable. It supposedly serves to satisfy the cynic that the claim of emotional distress is genuine. Yet we perceive two significant difficulties with the scheme. First, the classification is both overinclusive and underinclusive when viewed in the light of its purported purpose of screening false claims. It is overinclusive in permitting recovery for emotional distress when the suffering accompanies or results in any physical injury whatever, no matter how trivial. If physical injury, however slight, provides the ticket for admission to the courthouse, it is difficult for advocates of the "floodgates" premonition to deny that the doors are already wide open: as we observed in *Capelouto* v. *Kaiser Foundation Hospitals, supra,* 7 Cal.3d at page 893, "mental suffering frequently constitutes the principal element of tort damages...." More

---

[1] To the same effect, see *Wallace* v. *Coca-Cola Bottling Plants, Inc.* (Me. 1970) 269 A.2d 117, 121, in which the court discarded the rule that recovery for mental suffering is dependent on bodily injury being alleged or proved: "we adopt the rule that in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably forseeable mental and emotional suffering by a reasonably forseeable plaintiff, such proven damages are compensable even though there is no discernable trauma from external causes. The mental and emotional suffering, to be compensable, must be substantial and manifested by objective symptomatology."

significantly, the classification is underinclusive because it mechanically denies court access to claims that may well be valid and could be proved if the plaintiffs were permitted to go to trial.

The second defect in the requirement of physical injury is that it encourages extravagant pleading and distorted testimony. Thus it has been urged that the law should provide a remedy for serious invasions of emotional tranquility, "otherwise the tendency would be for the victim to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury, upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured." (Magruder, *Mental and Emotional Disturbance in the Law of Torts* (1936) 49 Harv.L.Rev. 1033, 1059; see also Annot. (1959) 64 A.L.R.2d 100, 117, fn. 18, 128 & fn. 8 [suggesting that "in most instances of severe mental disturbance some deleterious physical consequence can, with a little ingenuity, be found...," and that characterization of an injury as physical or mental may depend on the ingenuity of counsel in framing the pleadings].)

Furthermore, as we observed in *Sloane v. Southern Cal. Ry. Co., supra*, 111 Cal. at page 680, the border between physical and emotional injury is not clearly delineated. In 1896 we deemed a "nervous shock or paroxysm" to be distinguishable from mere mental anguish. Today, the notion that physical harm includes "shock to the nervous system" is an accepted aspect of our law of negligence. (See BAJI No. 12.71 (6th ed. 1977).) The Restatement, too, attempts to draw the distinction: "The rule [precluding recovery for negligently caused emotional distress alone] applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance...may be classified by the courts as illness, notwithstanding [its] mental character. This becomes a medical or psychiatric problem, rather than one of law." (Rest.2d Torts, § 436A, com. c.)

In our view the attempted distinction between physical and psychological injury merely clouds the issue. The essential question is one of

proof; whether the plaintiff has suffered a serious and compensable injury should not turn on this artificial and often arbitrary classification scheme. We thus agree with the view of the *Rodrigues* court: "In cases other than where proof of mental distress is of a medically significant nature, [citations] the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. [Citation.]" (472 P.2d at p. 520.) This standard is not as difficult to apply as it may seem in the abstract. As Justice Traynor explained in this court's unanimous opinion in *State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d at page 338, the jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience. In addition, there will doubtless be circumstances in which the alleged emotional injury is susceptible of objective ascertainment by expert medical testimony. (See Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort* (1971) 59 Geo.L.J. 1237, 1248 et seq.) To repeat: this is a matter of proof to be presented to the trier of fact. The screening of claims on this basis at the pleading stage is a usurpation of the jury's function.

More than half a century ago Roscoe Pound recognized that claims of emotional distress were capable of verification by means more precise than the then-prevailing requirement of physical impact; we think his logic applies equally to the present requirement of physical injury: "In reality [the impact requirement] was a practical rule, growing out of the limitations of trial by jury, the difficulty of proof in cases of injuries manifest subjectively only and the backwardness of our knowledge with respect to the relations of mind and body. In view of the danger of imposition, the courts, on a balance of the interests involved, refused to go beyond cases where there was a voucher for the truth of the plaintiff's claim. . . . With the rise of modern psychology the basis of this caution in securing an important element of the interest of personality was removed." (Pound, Interpretations of Legal History (1923) pp. 120-121.)

For all these reasons we hold that a cause of action may be stated for the negligent infliction of serious emotional distress. Applying these principles to the case before us, we conclude that the complaint states such a cause of action. The negligent examination of Mrs. Molien and the conduct flowing therefrom are objectively verifiable actions by the defendants that foreseeably elicited serious emotional responses in the plaintiff and hence serve as a measure of the validity of plaintiff's claim

for emotional distress. As yet another corroborating factor, we note the universally accepted gravity of a false imputation of syphilis: by statute it constitutes slander per se. (Civ. Code, § 46, subd. 2; *Schessler v. Keck* (1954) 125 Cal.App.2d 827 [271 P.2d 588].)

It follows that the trial court erred in sustaining the demurrer to the cause of action for emotional distress.

### III

■ The court also erred in sustaining the demurrer to the cause of action for loss of consortium. Both parties focus, appropriately, on our decision in *Rodriguez v. Bethlehem Steel Corp., supra*, 12 Cal.3d 382, in which this cause of action had its genesis in California. After rejecting a number of arguments against such recovery, we held that "each spouse has a cause of action for loss of consortium, as defined herein, caused by a negligent or intentional injury to the other spouse by a third party." (*Id.* at p. 408.)

The negligently inflicted injury in *Rodriguez* consisted of an extensive and permanent paralysis of the plaintiff's husband caused when he was struck on the head by a falling pipe weighing over 600 pounds. Defendants now urge that we limit the general principle there announced to the factual context in which it arose, and hold that the cause of action for loss of consortium requires severe physical injury to the nonplaintiff spouse. But nowhere in our opinion did we restrict its rule to the particular facts then before us. Defendants think it significant that we referred to Mr. Rodriguez's condition as a "severely disabling injury" and understood the personal loss suffered by the spouse of a "severely disabled person." (*Id.* at p. 400.) These simple descriptive phrases, however, will not support the inference defendants seek to draw: obviously a person may become "severely disabled" mentally no less than physically, and the resulting detriment to that individual's spouse is no less serious than if the disability were an impairment of mobility or other bodily function.[2]

---

[2]We are aware of the allegation herein that Mrs. Molien suffered "injury to her body and shock and injury to her nervous system." Thus defendants contend that neither trivial physical injury nor emotional injury is adequate to support a cause of action for loss of consortium. But since we have concluded above that the distinction between physical injury and emotional distress is no longer defensible, we do not uphold the present cause of action solely on the ground that *some* physical injury was alleged.

The issue in *Rodriguez* was whether to recognize the cause of action for loss of consortium at all (*id.* at p. 385), and our holding spoke only of recovery for "a negligent or intentional injury" to the plaintiff's spouse (*id.* at p. 408). We had no reason to delimit the kinds of "injury" that would support the cause of action, nor did we endeavor to do so. Certainly the facts presented a compelling justification for permitting Mrs. Rodriguez to recover: her loss was "palpable and extreme." (Note, *Right to Recover for Loss of Consortium* (1975) 63 Cal.L.Rev. 323.) But the fact that it was caused by a devastating physical injury to her husband was not vital to our decision. Indeed, we not only defined "consortium" to embrace such intangibles as "conjugal society, comfort, affection, and companionship," we acknowledged that "An important aspect of consortium is . . . the *moral* support each spouse gives the other . . . ." (12 Cal.3d at p. 405.) Thus the impairment of one spouse's mental health could well deprive the other of the "companionship and moral support that marriage provides no less than its sexual side." (*Id.* at pp. 405-406.)

Two years after *Rodriguez* the Massachusetts Supreme Court addressed this issue directly and recognized a cause of action for loss of consortium arising out of severe emotional distress intentionally inflicted on the plaintiff's spouse: "the underlying purpose of such an action is to compensate for the loss of the companionship, affection and sexual enjoyment of one's spouse, and it is clear that these can be lost as a result of psychological or emotional injury as well as from actual physical harm." (*Agis* v. *Howard Johnson Company* (1976) 371 Mass. 140 [355 N.E.2d 315, 320].) The same reasoning applies when, as here, the alleged injury is negligently inflicted.[3]

Finally, defendants present no persuasive reasons to justify their proposal to limit recovery for loss of consortium to cases in which the plaintiff's spouse suffers severe physical injury. Indeed, we perceive compelling grounds for not drawing this line. It is true our opinion in *Rodriguez* contemplates injury to the nonplaintiff spouse that is suffi-

---

[3]There is a paucity of authority from other jurisdictions. An Alabama court held, with no analysis, that the cause of action for loss of consortium is "premised upon a physical injury suffered by the spouse." (*Slovensky* v. *Birmingham News Co., Inc.* (Ala.App. 1978) 358 So.2d 474, 477.) In New York a plaintiff was apparently permitted to recover for loss of consortium when his wife developed a "cancerphobia" caused by the defendants' negligent medical malpractice. The propriety of the award, however, was not before the Court of Appeals when it reviewed the judgment in favor of the wife for her own mental anguish. (*Ferrara* v. *Galluchio, supra*, 176 N.Y.S.2d at p. 998.)

ciently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired. As we earlier explained, however, it is irrefutable that certain psychological injuries can be no less severe and debilitating than physical injuries. We could accept defendants' position only by rejecting the manifest truth that a marital relationship can be grievously injured when one spouse suffers a traumatically induced neurosis, psychosis, chronic depression, or phobia.

Whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to a cause of action for loss of consortium is a matter of proof. When the injury is emotional rather than physical, the plaintiff may have a more difficult task in proving negligence, causation, and the requisite degree of harm; but these are questions for the jury, as in all litigation for loss of consortium. In *Rodriguez* we acknowledged that the loss is "principally a form of mental suffering" (12 Cal.3d at p. 401), but nevertheless declared our faith in the ability of the jury to exercise sound judgment in fixing compensation. (*Ibid.*) We reaffirm that faith today.

The judgment is modified to order a dismissal of the second cause of action and, as so modified, the judgment is reversed in its entirety.

Bird, C. J., Tobriner, J., and Newman, J., concurred.

Manuel, J., concurred in the judgment.

**CLARK, J.**—I dissent.

Our court today allows—for the first time—a money award against one who unintentionally disturbs the mental tranquillity of another.

Because such disturbances are commonplace in our complex society, because they cannot be objectively observed or measured, but mainly because it is for the Legislature to create new causes of action and to fix the limits of recovery, this court has until today refused the invitation to open wide the door to damage claims fraught with potential abuse.

As acknowledged by the majority, this court's first significant extension of tort liability occurred in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], 12 short years ago.

In a four-to-three decision *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513] was overruled, to hold that a mother witnessing a negligent act causing the death of her minor child could maintain an action against the tortfeasor for "'great emotional disturbance and shock and injury to her nervous system' which caused her great physical and mental pain and suffering." (*Dillon* v. *Legg, supra,* 68 Cal.2d 728, 731.) In *Amaya,* five years earlier, we held that a mother observing her seventeen-month-old son "'struck and run over by the defendants' truck'" is not entitled to recover for her "'emotional shock and great mental disturbance . . . sustaining injury to her body and shock and injury to her nervous system and person . . . .'" (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 298.)

In overruling *Amaya,* this court created a new cause of action. (See *Dillon* v. *Legg, supra,* 68 Cal.2d 728, dis. opn. of Burke, J., at pp. 748-749.) But today's majority overstretch "the new elasticity proclaimed by the [*Dillon*] majority" (*id.,* at p. 749) which purported to limit recovery to damages for "shock which resulted in *physical* injury." (*Id.,* at p. 740; italics added.) Now the majority will permit recovery for negligently caused emotional distress unaccompanied by physical injury. The dissenters in *Dillon* were prescient in their concern our courts were entering a "'fantastic realm of infinite liability'" (*id.,* at p. 751).[1]

Good reason exists for denying recovery for plaintiffs' claim although the majority appear to acknowledge none. (*Ante,* at pp. 924-925.)[2] The requirement of a concurrence of physical injury with claimed emotional distress is a safeguard eliminating spurious claims for negligently inflicted mental distress. That safeguard is now abandoned in favor of newly declared standards designed by the majority opinion to limit recoveries under their new, independent tort. A plaintiff claiming his or

---

[1]The majority dismiss *Dillon's* three-point test as being inapplicable "to a case factually dissimilar to the bystander scenario" (*ante,* p. 923), and conclude we should look to *Dillon's* broader test of foreseeability of emotional trauma on a case-by-case basis. However, the majority cannot escape the Dillon requirement that even though foreseeable, emotional trauma must result from physical injury to another.

[2]The majority are encouraged to today's decision by Dean Prosser's longstanding advocacy. (*Ante,* pp. 924, 925-926.) However, even he recognizes the reasons for the current rule, stating immediately before language quoted by the majority (*ante,* at p. 926): "It is now more or less generally conceded that the only valid objection against recovery for mental injury is the danger of vexatious suits and fictitious claims, which has loomed very large in the opinions as an obstacle. The danger is a real one, and must be met. Mental disturbance is easily simulated, and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field." (Prosser, Torts (4th ed. 1971) § 54, p. 328.)

her mental tranquility has been disturbed can now recover "'where proof of mental distress is of a medically significant nature,'" or the claim of mental distress is supported by "'some guarantee of genuineness in the circumstances of the case.'" (*Ante*, p. 930.) In applying these standards, jurors are said to be "best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience." (*Id.*) Such standards are nonstandards, opening wide the door to abuse.

The majority incorrectly rely on *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330 [240 P.2d 282] for their contention that jurors are best situated to determine if a defendant's conduct causes emotional distress warranting recovery of damages pursuant to standards fixed by today's majority. However, *Siliznoff* deals with *intentional* infliction of fright, the court stating that jurors are "ordinarily in a better position . . .to determine whether *outrageous conduct* results in mental distress than whether that distress in turn results in physical injury." (*Id.*, at p. 311; italics added.) A different and difficult medical question is presented when the resulting *traumatic effect* of mental distress must be determined. It is this question which the majority would depend on jurors to answer. Relying on a medical study (Smith, *Relations of Emotions to Injury and Disease* (1944) 30 Va.L.Rev. 193), this court concluded in *Amaya* that questions of the effects of emotional distress would not be easy ones for jurors. "Here that 'difficult medical question' cannot be so easily avoided. In the cited article. . .Dr. Smith. . . concludes (1) that 'a majority of persons claiming injury from psychic causes possessed sub-normal resistance to psychic stimuli'; (2) that 'In only 55 of the 301 cases surveyed could we say actual causation was proved by a preponderance of substantial and credible evidence'; and (3) that hence 'The skeptical courts were. . .correct in doubting whether adequate criteria of proof existed in this field to make administration of a remedy feasible. Law, in a commendable desire to be forward looking, outran scientific standards. Taking all cases decided between 1850 and 1944. . .the net balance of justice would have been greater had all courts denied damages for injury imputed to psychic stimuli alone.'" (*Amaya* v. *Home Ice, Fuel & Supply Co., supra*, 59 Cal.2d 295, 311.) No empirical evidence exists and the record fails to establish that psychiatrists and jurors have since become better equipped to evaluate the traumatic effects of psychic stimuli.

The resolution of conflicts the majority would leave to jurors, "as doctors well know. . .often borders on fancy when the causation of al-

leged psychoneural disorders is at issue. . . . Much timeliness remains in Dr. Smith's warning (*id.*, at p. 212 of 30 Va.L.Rev.) that 'eagerness to be progressive may cause extravagent credulity and injury to scientific standards of proof.' Extravagant credulity, of course, means ultimate injustice." (*Id.*, at p. 312.)

The fundamental problem is not foreseeing (by unguided hindsight) the consequences of unintentional conduct, but rather realistically limiting liability for those consequences. "It is unthinkable that any one shall be liable to the end of time for all the results that follow in endless sequence from his single act. Causation cannot be the answer; in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world." (Prosser, *Palsgraf Revisited* (1953) 52 Mich.L.Rev. 1, 24.) In a system compensating injury based on fault, consideration must be given to the "moral blame attached to the defendant's conduct" (*Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]) in fixing liability. When the defendant's act is merely negligent rather than intentional, lesser moral blame attaches, cautioning against extending liability. (See Bauer, *The Degree of Moral Fault as Affecting Defendant's Liability* (1933) 81 U.Pa.L.Rev. 586, 588-592.) Liability should be proportionate to the actor's culpability, having in mind the utility and necessity of the conduct negligently performed. Where, as here, imposition of liability is far disproportionate to the degree of culpability, we do a disservice to the public—who must ultimately bear the cost—by sanctioning claims for hurt feelings.[3]

The signatories to the majority opinion have—in cases where the balance has weighed more heavily in favor of liability than in the instant case—refused for policy reasons to extend liability. In *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858], this court noted that "foreseeable injury to a legally recognized relationship" does not necessarily postulate a cause of action, and that "social policy must at some point intervene to delimit liability. . . . 'Every injury has ramifying consequences, like the ripplings of the wa-

---

[3]The majority's new cause of action will surely suggest to even the less ingenious a vehicle for avoiding prior limitations on certain causes of actions. For instance, while we have not for some time recognized a cause for alienation of affections—an intentional tort—the net effect of today's judgment is to permit recovery for emotional distress and loss of consortium caused by even the negligent alienation of plaintiff's wife's affections by defendant. And in a case of slander where the plaintiff is unable to establish all conditions to recovery for this intentional tort, cannot he now obtain relief by alleging his mental tranquility was disturbed—even negligently—by defendant's utterances?

ters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.'" (*Id.*, at p. 446.) The author of today's majority opinion has also properly cautioned against imposition of new burdens on the courts: "As Chief Justice Burger lamented in *United States* v. *Richardson* (1974) 418 U.S. 166, 179 [41 L.Ed.2d 678, 689-690, 94 S.Ct. 2940]: 'As our society has become more complex, our numbers more vast, our lives more varied, and our resources more strained, citizens increasingly request the intervention of the courts on a greater variety of issues than at any period of our national development.'" (*Carsten* v. *Psychology Examining Com.* (1980) *ante*, pp. 793, 801, fn. 2 [166 Cal.Rptr. 844, 614 P.2d 276].)

The majority's creation of new consequences for old acts is wrong. The judgment should be affirmed.

Richardson, J., concurred.