[No. B012139. Second Dist., Div. Two. Jan. 21, 1986.]

TESSA E. BUDAVARI, Plaintiff and Appellant, v.
DONALD J. BARRY et al., Defendants and Respondents.

**COUNSEL**

Munns, Kofford, Hoffman, Hunt & Throckmorton and Thomas Palffy for Plaintiff and Appellant.

Rushfeldt, Shelley & McCurdy, Kenneth W. Drake, Robert W. Nelms, Kennedy & Kennedy, Donald S. Kennedy, Kirtland & Packard, Marvin S. Shebby, Early, Maslach, Leavey & Nutt, Horvitz & Levy, Barry R. Levy, Marcela Gonzales-Phillips and Cheri A. Lewis for Defendants and Respondents.

Opinion

**ROTH, P. J.**—Tessa E. Budavari appeals from a judgment of dismissal following the sustaining of a demurrer to her complaint for negligent infliction of emotional distress and loss of consortium. Respondents are a hospital and three physicians.

The allegations of the complaint, which we accept as true and provable (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]), can be summarized as follows: Appellant's husband died of lung cancer on April 7, 1984. Some three years earlier he had been treated by the three physician respondents at the respondent hospital for chest and knee injuries suffered in an automobile accident. Chest X-rays taken at that time showed a possible lesion on the lung, and this fact was noted on the decedent's medical chart. Respondents negligently failed to inform the decedent of this finding or to further investigate it. In fact, the decedent had cancer in an early, curable stage. As a result of respondents' negligence, the cancer remained undiagnosed until August 1983, when it had reached a terminal state. She alleged emotional harm suffered while her husband was dying and after his death, and permanent loss of consortium due to his death.

Defendants demurred on the ground that the pleaded facts showed no claim by plaintiff either as a bystander eyewitness to a damaging negligent event or as a victim of negligence directed toward her.[1] The demurrers were sustained and judgment of dismissal was entered thereon. This appeal is from the judgment.[2]

The question presented is whether appellant has stated a claim within either the bystander rule of *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] or the "direct victim" principle of *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]. We hold that she has not.

---

[1]Respondent hospital here urges the medical malpractice statute of limitations, Code of Civil Procedure section 340.5, as an alternative ground for affirming the sustaining of the demurrer. The hospital did not rely on the statute of limitations in its demurrer; only respondent Barry did; but Barry does not rely on the statute of limitations in his brief to this court. Thus there is some question whether the statute of limitations defense is properly before us. In light of our disposition of the substantive issue in this case, we do not address the statute of limitations question.

[2]The original complaint was dismissed with leave to amend. Appellant then filed—though not timely—a "First Amended Complaint" identical to her original complaint. All four respondents moved to dismiss the action on the ground that appellant had failed to amend her complaint. In addition, respondents Ross and Hewins demurred to the "First Amended Complaint." The trial court signed an order of dismissal granting the former motion. Consequently it is the original complaint that is tested on this appeal.

In *Dillon* v. *Legg, supra,* a mother sought damages for emotional trauma she suffered from seeing her infant daughter run over by a negligently driven automobile. Earlier cases had held that an onlooker may not recover unless he was himself in the path of the danger and feared for his own safety. ■ Bystander emotional distress cases present a duty-of-care issue turning on the degree of foreseeability of the risk, the court said, which should be evaluated in each case according to "such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Dillon* v. *Legg, supra,* 68 Cal.2d at pp. 740-741.)[3] The court held that the mother, who alleged that she witnessed her child's accident at close range, had stated a good cause of action.

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, the Supreme Court, again citing the duty to avoid foreseeable risks, recognized another category of plaintiffs who can recover for emotional harm without physical impact. In *Molien* defendant physicians negligently misdiagnosed their patient as syphilitic, and instructed her to inform her husband and have him tested for the disease. His complaint for his resulting emotional distress was held by the Supreme Court to state a cause of action. The court reasoned that he should be characterized as a "direct victim" of the defendants' negligence. The incorrect diagnosis of syphilis was an act foreseeably causing the patient's husband emotional distress directly, not merely indirectly in connection with his concern for his wife's well-being. The communication of the erroneous diagnosis, the court reasoned, would signify to the husband both that he would likely have the loathsome disease himself and that either his wife had been unfaithful or she would accuse him of infidelity. Thus emotional harm to the husband was a foreseeable result.

Our Supreme Court recently discussed both the bystander cases and the direct victim cases in *Ochoa* v. *Superior Court* (1985) *supra,* 39 Cal.3d 159. In *Ochoa* plaintiff alleged she was an eyewitness to the refusal of defendants (juvenile detention authorities) to provide necessary medical attention to her acutely ill son, who was in their custody. The court held that as a percipient witness to both defendants' negligence and the harm thereby inflicted on her child, she was a proper *Dillon* bystander plaintiff.

---

[3]These three factors are to be evaluated and weighed; they are not treated as three indispensable elements of a bystander claim. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 166, 168 [216 Cal.Rptr. 661, 703 P.2d 1].)

The appellant at bench does not fit within either theory. ■ She is not a *Dillon* plaintiff—a percipient witness to the respondents' negligence—for the failure to detect cancer or to follow up on the X-ray findings was not an "event" which could be witnessed.[4] Indeed appellant concedes this point.

■ Appellant contends, however, she was a "direct victim" of respondents' negligence. She relies on language in *Molien* eschewing "a rote application of the guidelines to a case factually dissimilar to the bystander scenario." (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.) She also cites the caveat in *Dillon* that "whether defendant owes a duty or obligation to plaintiff . . . must necessarily be adjudicated only upon a case-by-case basis. . . . [N]o immutable rule can establish the extent of that obligation for every circumstance of the future." (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 740.) In our opinion, however, *Molien* is distinguishable.

In *Molien* the defendants were negligent not only toward their patient but also toward her husband; they negligently exposed him directly to an unreasonably great risk of suffering emotional harm. At bench, by contrast, the respondents' breach of their duty of care ran *only* to their patient, appellant's husband; any risk of distress to the appellant herself was indirect, being the product of her reaction to her husband's illness.

In *Ochoa* the Supreme Court drew the same distinction based on a consideration of whom the negligence was directed toward: "In *Molien* defendant's misdiagnosis was, by its very nature directed at both the wife and the husband. . . . By contrast, here the defendants' negligence in the instant case was directed primarily at the decedent, with Mrs. Ochoa looking on as a helpless bystander as the tragedy of her son's demise unfolded before her. While she was a foreseeable plaintiff to whom the defendants owed a duty of care pursuant to our holding in *Dillon,* the duty owed was owed to her as a percipient witness, not as a direct victim of negligence." (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d at pp. 172-173.)

A proper invocation of *Molien* by a plaintiff is illustrated by *Accounts Adjustment Bureau* v. *Cooperman* (1984) 158 Cal.App.3d 844 [204 Cal.Rptr.881]. The parents of a two-year-old child alleged they had suffered emotional harm from learning the defendant psychologist's incorrect diagnosis that the child suffered from an organic brain syndrome. The court held that if the parents could amend their complaint to allege that the particular syndrome incorrectly diagnosed was a serious and frightening one and that

---

[4]The "event" witnessed in a *Dillon* case need not, however, be a "brief and sudden occurrence" producing an immediate injury. A course of negligence lasting over a period of several hours, and witnessed by the plaintiff, is actionable. (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, 168.)

they so understood it, then they would state a good cause of action as "direct victims" of the defendant's negligent misdiagnosis.

*Cooperman,* like *Molien,* entailed the inaccurate diagnosis of a frightening disease and communication of that diagnosis to a family member who would foreseeably suffer emotional harm from hearing the diagnosis.[5] Not every incorrect diagnosis, however, inflicts emotional harm directly on a patient's family members. At bench, the negligence consisted of a failure to diagnose cancer; there was no communication of distressing false information directly to the appellant. Hence, she is not a direct victim. Her emotional distress flowed solely from her sympathy with the suffering visited on her husband through the respondents' negligence; after his death her emotional distress was grief over his death.[6]

Although appellant has no claim under either the *Dillon* or the *Molien* theory, we do not suggest that a plaintiff whose spouse dies as a result of a defendant's negligence suffers no legally cognizable loss. Rather, her claim amounts to a wrongful death negligence case. What she seeks here is beyond the extent of the respondents' liability. ■ In this state damages recoverable for *wrongful death do not include compensation for grief or sorrow.* (*Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022].) ■ The case at bench amounts to an effort to recover this nonrecoverable element by filing a complaint for negligent infliction of emotional distress rather than for wrongful death. But the nature of the negligence pleaded, and its legal consequences, are the same.[7]

In *Dillon* the Supreme Court recognized the necessity of limiting "the otherwise potentially infinite liability which would follow every negligent

---

[5]These cases fall within the more general rule of Restatement Second of Torts section 436, subdivision (1) (1965), recognizing liability for conduct negligently exposing another to fright or other emotional disturbance involving an unreasonable risk of bodily harm resulting therefrom.

[6]The facts at bench are more akin to *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883]. There defendant hospital's allegedly negligent failure to diagnose plaintiff's child's ailment resulted in the child's death. The plaintiff mother witnessed the child's painful deterioration and death, and herself suffered emotional harm as a result. *Jansen* antedated *Molien* by some seven years, and so the "direct victim" theory was not discussed. The case was brought on a *Dillon* theory; the court denied recovery on the dual grounds that the negligent omission to make a correct diagnosis was not an event capable of being witnessed, and that *Dillon* applies only when the bystander witnesses a "sudden and brief event." The latter holding was recently disapproved by *Ochoa.* (See *ante,* fn. 4.)

[7]Indeed, respondent hospital in its brief (at p. 4, fn. 2) suggests the pendency of such a wrongful death action in Los Angeles Superior Court, case NEC 38352. To the extent that appellant here seeks recovery for loss of consortium, a wrongful death action affords compensation for equivalent elements: loss of support or services, and deprivation of love, companionship, affection, and the like. (*Krouse* v. *Graham, supra,* 19 Cal.3d 59; see *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].)

act . . . ." (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 739. As we stated in *Scherr* v. *Las Vegas Hilton* (1985) 168 Cal.App.3d 908, 910 [214 Cal.Rptr. 393], "It would surely be an unreasonable burden on all human activity if a defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it. (Prosser & Keeton on Torts (5th ed. 1984) p. 366.)"[8]

The judgment is affirmed.

Beach, J., and Gates, J., concurred.

---

[8]The Supreme Court has pending three cases involving negligence causing emotional distress to bystanders: *Elden* v. *Sheldon* (L.A. 32063, hg. granted Apr. 25, 1985); *Garcia* v. *Superior Court* (1985) 169 Cal.App.3d 397 [215 Cal.Rptr. 189] review granted Sept. 19, 1985 (L.A. 32104); and *Nevels* v. *Yeager* (L.A. 31901, hg. granted Apr. 26, 1984). The former two cases present the issue whether *Dillon* recovery is available to a bystander who, though not a family member, is the cohabitant lover of the accident victim. In the latter case the issue is whether *Dillon* recovery is available to an accident victim's parent who does not witness the accident but arrives at the scene within ten minutes. The issues in these pending cases are not sufficiently apposite to those at bench to justify a delay of our decision.