**Antonio MARENO, Plaintiff,**

v.

**Edward D. RE, individually and as Chief Judge of the United States Court of International Trade, Defendant.**

**No. 82 Civ. 6420–CSH.**

United States District Court,
S.D. New York.

Feb. 15, 1983.

Antonio Mareno, pro se.

John S. Martin, Jr., U.S. Atty., New York City, for defendant; Jordan Stanzler, Asst. U.S. Atty., New York City, of counsel.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

On October 31, 1961 plaintiff Antonio Mareno entered on duty as a law assistant to the Honorable Scovel Richardson, a Judge of the United States Customs Court (redesignated in 1980 as the Court of International Trade). Insofar as the present record appears, Mr. Mareno served Judge Richardson honorably and effectively until March 30, 1982, when, regrettably, Judge Richardson died. On April 28, 1982 defendant, the Honorable Edward D. Re, Chief Judge of the Court of International Trade, gave Mareno written notice that owing to Judge Richardson's death, Mareno would be "involuntarily separated from service on September 30, 1982," with the further proviso that if a successor judge entered on duty before that date, Mareno would be "involuntarily separated on the date the successor judge enters on duty." By order to show cause filed on September 29, 1982, Mareno sought a temporary restraining order and preliminary injunction preventing his discharge, alleging that Judge Re's act of termination violated Mareno's constitutional property and liberty interests. Judge Re has moved for summary judgment dismissing the complaint, on the grounds that no constitutional violations are demonstrated, and that, in the alternative, he is judicially immune from suit. A temporary restraining order was entered, and extended on defendant's consent, retaining Mareno in the employment of the Court until defendant's motion was decided.

Because it is apparent that Mareno has no viable basis for asserting a constitutionally protected property interest in his position at the Court of International Trade, I grant defendant's motion for summary judgment under Rule 65, F.R.Civ.P., vacate the restraining order, and dismiss the complaint with prejudice.

I.

The existence *vel non* of a federal employee's property interest in his job depends upon the provisions of the pertinent stat-

utes and regulations. *Smith v. Lehman,* 689 F.2d 342 (2d Cir.1982). In the case at bar, Mareno's claim is sufficiently non-frivolous to create a basis for federal court jurisdiction pursuant to 28 U.S.C. § 1331. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Smith v. Lehman, supra.* Accordingly I turn to the pertinent statute and its subsequent implementation.

On September 9, 1959, the Congress amended 28 U.S.C. § 871 so that it thereafter read:

> "The Customs Court may appoint a clerk, a chief deputy clerk, an assistant clerk, deputy clerks, and such deputies, assistants, and other employees as may be necessary for the effective dispatch of the business of the court, who shall be subject to removal by the court."

The legislative history accompanying this enactment makes it clear that Congress intended to resolve an anomaly whereby Customs Court employees, alone among members of the judicial branch, were subject to the civil service laws administered by the executive branch. The pertinent House report reads as follows:

> "Delete from the present Customs Court statute the references to the civil service laws with respect to its appointments. The background is that this small group of about 70 persons is the only one under any court of the U.S. judicial system that is subject to the Civil Service Act of 1883. It is to be explained by the history of the court, which was originally the Board of General Appraisers in the Treasury Department, the employees of which were appointed by the Attorney General, in conformity to the civil service laws, as provided for by the successive tariff acts codified in 19 U.S.C. 6. In the Codification Act of 1948 this authority was transferred to the Customs Court, but there remained the anomaly that the appointments, though made by a part of the judiciary, were continued subject to the civil service laws administered by the executive branch. The present provision would correct that inconsistency. It

would not, of course, be intended to affect the employees' coverage under the Retirement Act and the Federal Employees Group Life Insurance Act." H.R. Report 944, 86th Cong., 1st Session, reprinted in 1959 U.S.Code Congressional and Administrative News, pp. 2280, 2281.

On October 10, 1980, Congress further amended § 871 so as to substitute for the name "Customs Court" the "Court of International Trade."

In consequence of the 1959 amendment, when Mareno was hired as a law assistant in 1961 the governing statute provided that he was "subject to removal by the court."

On August 21, 1980, the judges of the United States Customs Court conducted a special meeting and adopted a resolution with respect to the judges' authorized staff. That resolution, made effective October 1, 1980, provided that a judge was authorized to have three personnel positions, which may be either: one secretary and two law clerks; or, one secretary, one law clerk, and one crier. The chief judge of the court was authorized one additional personnel position, which might be either one secretary or one law clerk. The resolution set forth procedures for appointment, promotion, and separation of staff personnel. On page 6 of the resolution, the following language appears:

## "SEPARATION UPON THE DEATH, RESIGNATION OR RETIREMENT OF A JUDGE

> "Upon the death, resignation or retirement of a judge, any person serving as a law clerk, secretary or crier to the judge may retain the position for a period not to exceed 30 days. The chief judge, subject to the availability of funds, may authorize the retention of any such person beyond the 30-day period, when the circumstances so warrant; provided, that no person may be retained beyond the date when a successor judge enters on duty. When a judge assumes senior status, and is eligible to retain a law clerk and a secretary, the Administrative Office of

the United States Courts shall be notified so that appropriate action may be taken."

The certification of Mr. Joseph E. Lombardi, Clerk of the Court, which accompanied the resolution, reads as follows:

"The attached Resolution, subject to the proviso that no incumbent law assistant will be reduced in grade, was adopted and made effective October 1, 1980 at a special meeting of the United States Customs Court held on August 21, 1980."

The quoted proviso, "that no incumbent law assistant will be reduced in grade," resulted from the following circumstances. The Customs Court had originally referred to individuals performing services such as Mr. Mareno's as "law assistants." That designation is, of course, consistent with 28 U.S.C. § 871, which authorized the court to appoint, *inter alia,* such "assistants" as may be necessary for the conduct of its business. As of August, 1980 Mareno was employed as a senior law assistant, JSP–15 grade level, on Judge Richardson's staff.

At a meeting in September, 1979, the Judicial Conference of the United States approved guidelines for the employment of secretaries and law clerks by United States circuit judges, district judges, and bankruptcy judges. Those guidelines provided, *inter alia,* that a district judge may employ a secretary and two law clerks, or a secretary, a law clerk and a crier, subject to the JSP grade levels and qualification standards adopted by the Judicial Conference. The guidelines further provided that the chief judge of the district court having five or more district judges might employ an additional secretary or law clerk, subject to the same levels and qualification standards. The Judicial Conference guidelines authorized, as maximum grade levels, the grade of JSP–12 for a "law clerk," except that a law clerk who had served a federal judge for five years or more was eligible for the grade JSP–13.

The resolution of the Customs Court in August 1980 was intended to make applicable to the chief judge and the judges of that court those provisions of the plan adopted by the Judicial Conference pertaining to the chief judge and judges of a district court having five or more judges.

However, the Customs Court judges recognized that implementation of these guidelines without exception would work an inequity upon individuals such as Mareno, who by virtue of their length of service had achieved a rank of JSP–15. Hence the proviso accompanying the resolution: "that no incumbent law assistant [such as Mareno] will be reduced in grade."

In consequence of these enactments, Chief Judge Re prepared and forwarded to the Administrative Office of the United States Courts a revised listing of positions and employees assigned to each of the judges of the court. Those revised listings, forwarded to the Administrative Office under date of November 3, 1980 and which were effective November 1, list Judge Richardson's authorized staff as consisting of two "law clerks" and a secretary. Mr. Mareno is listed as an "incumbent" with a grade of JSP–15 and a title of "senior law assistant." Chief Judge Re's forwarding letter to the Administrative Office called the latter's attention to such incumbents who "shall retain either the present grade, the present title, or both the present grade and title." This advice to the Administrative Office implemented the proviso, quoted *supra,* which accompanied the August 21, 1980 resolution of the court.

Following Judge Richardson's death, Mr. R. Glenn Johnson, Chief, Division of Personnel of the Administrative Office, wrote to Chief Judge Re as follows:

"As a result of the death of Honorable Scovel Richardson, about which we were very sorry to learn, there arises the matter of determining an appropriate retention period for the members of his staff who are as follows:

| | |
|---|---|
| John M. Anderson | Law Clerk |
| Antonio Mareno | Law Clerk |
| Elvira C. Wechter | Secretary |

"It is the practice to continue the employment of deceased judges for a period sufficient to enable them to wind up the official affairs of the judge. This can ordinarily be handled in a period of ap-

proximately 30 days. In the present situation we would suppose that the retention of the above employees for a period not to exceed the close of business April 29, 1982 would allow them sufficient time to close out the official affairs of Judge Richardson's office, although it may be that the services of John M. Anderson and Antonio Mareno would not be required for that entire period.

"Would you please be good enough to consider the foregoing and let us hear from you at your earliest convenience in order that we may make the necessary arrangements with respect to the continuation of the above employees and their subsequent termination."

On April 28, 1982, Chief Judge Re wrote to Mr. Mareno:

"Dear Mr. Mareno:

"Due to the death, on March 30, 1982, of Judge Scovel Richardson, to whom you were assigned as law assistant, please be advised that you will be involuntarily separated from service on September 30, 1982. However, if a successor judge enters on duty before that date, you will be involuntarily separated on the date the successor judge enters on duty."

This action followed.

## II.

The foregoing circumstances foreclose a finding that Mr. Mareno has a property interest in his position at the Court of International Trade. When he entered on duty with that court, the governing statute provided that court personnel "shall be subject to removal by the court." This language is inimical to the concept of a property interest in employment by the court. Rather, the language is consistent with the concept of service at the pleasure of the court, and removal without cause. Judge Palmieri reached the same conclusion in a comparable action brought by a Customs Court clerk who had been summarily dismissed. *Walsh v. Oliver, et al.,* 65 Civ. 1844 (S.D.N.Y., decided Oct. 22, 1965). Cf. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961); *Williams v. McClellan,* 569 F.2d 1031 (8th Cir.1978).

Mareno contends that his termination at the hands of Chief Judge Re was invalid because the Chief Judge did not convene a meeting of "the court" before taking the action. However, the entire court, in its August 21, 1980 resolution, expressly limited, to a period not to exceed thirty days, the time within which the law clerk of a deceased judge may retain his office. Assuming *arguendo* that 28 U.S.C. § 871 requires removal action by the full court to be effective, that resolution, enacted by the full court and binding upon plaintiff in the melancholy position in which he now finds himself, is clearly effective. The court's resolution vested the chief judge with discretion in retaining a law clerk beyond the 30-day period. No suggestion is made that the chief judge could not validly be endowed with such discretion; and indeed, in the case at bar Chief Judge Re has exercised it in Mareno's favor, continuing his service for six full months, through September 30, 1982.

Plaintiff also argues that the August 21, 1980 resolution should be regarded as prospective only, and not retroactive. That is, he argues that the resolution applies only to "law clerks" to be hired in future, and cannot validly apply to "law assistants" of his seniority and tenure. But that interpretation distorts the plain wording of the resolution. If Mareno's interpretation were correct, the saving proviso with respect to "incumbent law assistants" would have been entirely unnecessary. The Administrative Office, in its letter to Chief Judge Re following Judge Richardson's death, referred to Mr. Mareno as one of Judge Richardson's two "law clerks"; and that is quite clearly what Mr. Mareno had become under the clear and unambiguous wording of the court's resolution.

The argument available to Mr. Mareno which invokes the most sympathy arises out of hearings conducted before various House subcommittees on appropriations. At those hearings, judges of the United States Customs Court, in asking for increases in salary

grades for the court's law clerks (sometimes called "assistants," sometimes "law secretaries"), stressed the need of retaining these individuals in permanent service to the court. Thus, in hearings before Congressman Rooney's judiciary subcommittee on appropriations for 1959, judges of the Customs Court submitted a written statement that "[o]ver the years the position of senior law clerk-secretary to a judge of the United States Customs Court has been a career position"; and Judge Mollison of the Customs Court testified before Congressman Rooney's subcommittee:

"We think, and our court has always felt, that the nature of the subject matter would make it not advisable or it would be difficult for us to use the system of changing secretaries, and throughout the years customs court and the judges have operated with law secretaries who made a career of the position. We do not think that a secretary would be of very much value to us if he were there for a year only and then left. We feel it would place an undue burden on the judges in dealing with all of the detail and complex facts of customs cases, especially since we have such a large mass or number of cases, if we should lose our career law secretaries and be compelled to use a system of changing secretaries. So, we are more or less wedded to and committed to the question of a career secretary, and the person who comes in as a secretary is more or less usually committed to the career of being a customs court secretary, and he forgoes [sic] the opportunities of making higher amounts of income in private practice.

"We think that in order to prevent the loss of our secretaries, which has been a real problem all the time, they should have a classification which would more nearly meet the demands of the situation, and prevent a turnover in the secretaries and loss of law secretaries."

Comparable statements were made by judges of the court in subsequent appearances before the appropriations committee.

Mr. Mareno avers, and I have no reason to doubt, that at the time he was recruited by Judge Richardson, the Judge, a strong supporter of the career system, stressed that aspect of the job to Mareno. I can therefore accept that, when Mareno entered upon duty with the court, he entertained an expectation of treatment as a permanent, career employee.

However, such expectations, understandings or customs—even if shared by Mareno and the judges of the court when he entered on service—cannot create a property interest if they are contrary to the express provisions of the governing statute. *Baden v. Koch,* 638 F.2d 486, 492 (2d Cir. 1980). And so we return to 28 U.S.C. § 871, which remains the insuperable obstacle to plaintiff's property interest claim. Whatever judges of the court may have said to an appropriations subcommittee in an effort to obtain more favorable salary treatment for court staff, and whatever actions the Congress may have taken in response to those requests, the fact remains that court personnel "shall be subject to removal by the court." It is that declaration which constitutes the overriding expression of congressional intent. Indeed, in the face of such a declaration, departmental policies or practices are insufficient in law to create a property interest in employees. *Sims v. Fox,* 505 F.2d 857 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); *Fiorentino v. United States,* 607 F.2d 963 (Ct.Cl.1979). The most that can be said is that, in more recent years, the judges of the Court of International Trade appear to have changed their minds about the desirability of "permanent" or "career" law assistants. That comes as a most unwelcome development as far as Mr. Mareno is concerned, and it is impossible not to regard him with compassion. But it is a change of policy which, under the governing statute, the judges were entitled to make, and which plaintiff is powerless to prevent.

Of course, the length of Mr. Mareno's service and the consequent narrowing of his legal expertise are factors which further engender sympathy. But "longevity alone does not establish tenure," *McNeill v. Butz,*

480 F.2d 314, 320 (4th Cir.1973); these are considerations which come to nothing in the face of the explicit denial of tenure in § 871.

### III.

Because plaintiff does not and cannot demonstrate a property interest in his position with the Court of International Trade, I grant defendant's motion for summary judgment.[1]

The Clerk of the Court is directed to enter judgment in favor of defendant, dismissing the complaint with prejudice and without costs.

It is So Ordered.

---

1. Having rejected plaintiff's claim on the merits, I need not reach defendant's alternative contention, that the action is barred by the doctrine of judicial immunity. Cf. *Smith v. Lehman, supra,* at 345.

Plaintiff's papers contain references to a liberty interest claim. Of course, the fact that he has no viable property interest claim does not "diminish his constitutionally recognized liberty interest in protecting his reputation against the publication of false information by the Government." *Smith v. Lehman, supra,* at 345 n. 8. However, there is no indication in this record that the defendant damaged Mareno's reputation by publicly releasing false and defamatory information concerning him. Accordingly there is no basis for the assertion of a liberty interest claim.