**Herminia M. GARCIA, Plaintiff,**

**v.**

**Honorable Spencer Mortimer WILLIAMS, Judge, United States District Court for the Northern District of California, individually and in his official capacity as Judge and as founder and past President of the Federal Judges Association, and The Federal Judges Association, Defendants.**

**Civ. No. 87–6163–MFM.**

United States District Court, N.D. California.

Sept. 1, 1988.

are taken as true. *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1332 (9th Cir.1987).

---

Daniel Robert Bartley, San Francisco, Cal., for plaintiff.

H. Sinclair Kerr, Jr., Stephen Kaus, James. W. Wagstaffe and Amy B. Slater, Kaus, Kerr & Wagstaffe, San Francisco, Cal., for defendant Williams.

Keven M. Forde, Richard J. Prendergast, Chicago, Ill., Douglas R. Young, Farella, Braun & Martel, San Francisco, Cal., for defendant Federal Judges Ass'n.

## OPINION

MARSH, Judge, Sitting by Designation.

Plaintiff, the former secretary to United States District Judge Spencer Williams, brings this action alleging that she was sexually harassed and wrongfully discharged in violation of her constitutional rights under the First and Fifth Amendments to the United States Constitution. Plaintiff also alleges that defendants' conduct violates the United States District Court's Equal Employment Opportunity (EEO) Plan and constitutes several state common law torts.

Defendants Williams and the Federal Judges Association (FJA) move to dismiss. For the reasons set forth below, defendant Williams' motion is granted in part and denied in part. Defendant FJA's motion is granted.

## STANDARDS

Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984) *cert. denied* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). For the purpose of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations

## DISCUSSION

Plaintiff divides her claims for relief into three categories: (1) *Bivens* Constitutional Claims; (2) Wrongful Termination Grounded in EEO Violations; and (3) State Common Law Tort Claims. I address plaintiff's claims under these categories.

## I. BIVENS CONSTITUTIONAL CLAIMS

Plaintiff alleges a multitude of constitutional violations. Before proceeding to the merits of those claims, however, it must be determined whether plaintiff's claims are cognizable under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

In *Bivens*, the Court held that a victim of a constitutional violation by a federal official may bring a claim for money damages despite the absence of a statute creating a private right of action. 403 U.S. at 397, 91 S.Ct. at 2005.[1] A *Bivens* action may be defeated upon a showing of (1) "special factors counselling hesitation in the absence of affirmative action by Congress;" or (2) an explicit congressional declaration that another remedy is exclusive and viewed by Congress as equally effective. *See e.g., United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 3060–61, 97 L.Ed.2d 550 (1987).

### A. "Special Factors" Analysis—Generally

There are several Supreme Court cases addressing the "special factors" analysis referred to in *Bivens*. Although discussed at length below, the cases can be summarized as holding that a court may consider the following when determining whether "special factors" militate against the cre-

---

1. The jurisdictional basis for a *Bivens* claim is 28 U.S.C. § 1331 which provides district courts with original jurisdiction over all civil actions

ation of a *Bivens* cause of action: [2]

(1) Whether Congress, rather than the judiciary, is the appropriate branch of government to regulate the particular field involved (*See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) and *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983));

(2) Whether Congress has been legislatively active in regulating the particular field involved and whether there are any indications that its failure to create a remedy comparable to *Bivens* is not inadvertent (*See Schweiker v. Chilicky*, —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) and *Bush*, 462 U.S. 367, 103 S.Ct. 2404);

(3) Whether the creation of a judicial remedy would inhibit or disrupt the potential defendants from carrying out their particular duties (*Compare Stanley*, 107 S.Ct. 3054; *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) and *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979));

(4) Whether money damages is an appropriate remedy for the constitutional violation (*See Davis*, 442 U.S. 228, 99 S.Ct. 2264).

In *Davis v. Passman*, the former deputy administrative assistant to a United States Congressman alleged that her due process rights under the Fifth Amendment had been violated when she was discharged from her position due to her sex. 442 U.S. at 231, 99 S.Ct. at 2269. The defendant Congressman moved to dismiss on the basis, *inter alia*, that plaintiff failed to state a claim upon which relief could be granted.

The Court concluded that plaintiff had a *Bivens* action for money damages and that no "special factors" existed to defeat the action. In response to the defendant's argument that no right of action should be

permitted because judicial review of congressional employment decisions would involve a lack of respect due coordinate branches of government, the Court concluded that the Speech or Debate Clause of the Constitution adequately protects members of Congress within the sphere of legitimate legislative activity.[3] *Id.* at 236 n. 11, 246, 99 S.Ct. at 2272 n. 11, 2277; *See also Carlson v. Green*, 446 U.S. at 19, 100 S.Ct. at 1472 (special factors do not exist to protect prison officials from *Bivens* actions, even if such actions inhibit their official duties, because qualified immunity provides adequate protection).

In *Chappell v. Wallace*, the Court held that enlisted military personnel may not bring a *Bivens* claim against a superior officer due to the existence of "special factors." In so holding, the Court stated:

The special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command. Here, as in *Feres*, we must be "concern[ed] with the disruption of '[t]he peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superior into court.

462 U.S. at 303–04, 103 S.Ct. at 2367.

Similarly, in *Bush v. Lucas*, the Court declined to allow a *Bivens* action by a federal employee who was demoted for exercising his First Amendment right to free speech. 462 U.S. at 390, 103 S.Ct. at 2418. When addressing the existence of "special factors," the Court noted that the cases used in *Bivens* to "illustrate" the meaning of the term related to the policy question of who should decide whether a particular

---

"arising under the Constitution, laws or treaties of the United States."

**2.** This summary is not meant to be an exhaustive list of appropriate special factors but rather a synopsis of factors considered by the Supreme Court to date.

**3.** The Speech or Debate Clause of the Constitution provides in Art. I, section 6, that Senators and Representatives "shall not be questioned in any other Place" for "any Speech or Debate in either House."

remedy is appropriate. *Id.* at 380, 103 S.Ct. 2412–13.[4]

In reaching its determination that "special factors" existed which counselled hesitation, the Court reviewed the extensive legislation protecting federal civil servants.[5] The Court noted that the costs associated with the review of disciplinary decisions is significant in monetary terms as well as "the time and energy of managerial personnel who must defend their decisions." *Id.* at 388, 103 S.Ct. at 2417. The Court concluded that "it is quite probable that if management personnel face[d] the added risk of personal liability for decisions that they believe[d] to be a correct response to improper criticism of the agency, they would be deterred from imposing discipline in future cases." *Id.* at 389, 103 S.Ct. at 2417. In addition, the Court noted:

> In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may inform itself through factfinding procedures such as hearings that are not available to courts.

*Id.*

Following its decision in *Bush,* the Court clarified the "special factors" analysis in *United States v. Stanley.* Like *Chappell, Stanley* involved the propriety of permitting a *Bivens* claim for injuries arising out of military service. 107 S.Ct. at 3057. In concluding that a *Bivens* claim would not be allowed, the Court addressed the relevance of other remedies available to the plaintiff:

> [I]t is irrelevant to a "special factors" analysis whether the laws currently on the books afford Stanley, or any other particular serviceman, an "adequate" federal remedy for his injuries. The

"special facto[r]" that "counsel[s] hesitation" is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate.

*Id.* at 3063 (citations omitted).

The most recent Supreme Court case in this area is *Schweiker v. Chilicky.* In *Schweiker,* the issue before the Court was "whether the improper denial of Social Security disability benefits, allegedly resulting from violations of due process by government officials who administered the Federal Social Security program, may give rise to a cause of action for money damages against those officials." 108 S.Ct. at 2463. The Court, relying heavily upon *Bush,* held that it did not.

Like *Bush,* the Court's "special factors" analysis focused on Congress' activity in establishing the structure and procedure of the Social Security system:

> Congress ... has addressed the problems created by state agencies' wrongful termination of disability benefits. Whether or not we believe that its response was the best response, Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program. Congress has discharged that responsibility to the extent that it affects the case before us, and we see no legal basis that would allow us to revise its decision.

*Id.* at 2470–71 (citations omitted).

**B. *Existence of "Special Factors" in the Present Case***

Defendant Williams argues that plaintiff has no cognizable *Bivens* claim, without examining any "special factors," because plaintiff had an alternative remedy available under the EEO plan (General Order 15) for the Northern District of California.

---

**4.** The cases specifically referred to are *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) and *United States v. Gilman,* 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954).

**5.** It is important to note, however, that the *Bush* Court assumed for purposes of decision that "civil service remedies were not as effective as an individual damages remedy." *Id.* 462 U.S. at 372, 103 S.Ct. at 2408.

In the alternative, defendant Williams argues that the existence of General Order 15 is a "special factor" in that the Judicial Conference, established by Congress, mandated such plans to protect against discrimination on the basis of race, sex, color, national origin, religion, age or physical handicap. In this respect defendant Williams contends that, as in *Bush*, the "congressional occupation of the field of federal employment" should cause this court hesitation in creating a *Bivens* remedy.

Second, defendant Williams argues that plaintiff's status as a confidential secretary is a "special factor" in that a close working relationship between a judge and his or her staff is important to the smooth and efficient functioning of the courts.

Finally, defendant Williams contends that "the Constitution, by protecting the salary and tenure of federal judges, recognizes that these officials must be shielded from threats to their independence" and that providing plaintiff with a remedy "would accomplish indirectly (by payment of damages by the Judge personally for his official conduct) what the Constitution directly prohibits."

### 1. General Order 15

 It is undisputed that plaintiff was an excepted[6] federal employee under the Civil Service Reform Act of 1978 (CSRA)[7] and thus not entitled to the protections afforded under 5 U.S.C. § 7513 of the CSRA[8] or Title VII (42 U.S.C. § 2000e–2). Rather, the conditions of plaintiff's employment are only governed by General Order 15.

General Order 15 sets forth a grievance procedure for any complaint by an employee concerning discrimination in violation of the plan. The grievance is filed with the EEO Coordinator who, in consultation with the head of the Court unit involved, investigates the complaint. If the grievance is not resolved, a conference is held with the Chief Judge of the Court "or his designee." It is undisputed that a grievant has no right to money damages under the plan.

I cannot agree that General Order 15 in and of itself constitutes a third criterion which prevents this court from allowing a *Bivens* action. As noted above, a *Bivens* action may only be defeated upon a showing of either (1) "special factors counselling hesitation in the absence of affirmative action by Congress;" or (2) an explicit congressional declaration that another remedy is exclusive and viewed by Congress as equally effective. *See e.g., Stanley*, 107 S.Ct. at 3060–61. Defendant Williams does not contend, nor could he successfully, that Congress has explicitly declared that an EEO plan is an exclusive remedy and viewed equally effective by Congress.

While General Order 15 does not constitute a separate ground for denial of a *Bivens* claim, the question still remains whether it is a "special factor" counselling hesitation. This question is best answered with an analysis of the Court's rulings in *Bush* and *Schweiker*. It is clear from these cases, that the adequacy of an existing administrative remedy is not relevant to the "special factors" analysis. What is relevant, however, is whether Congress has given careful attention to the area involved and "whether there are reasons for allowing Congress to prescribe the scope of relief that is made available." *Bush*, 462 U.S. at 380, 103 S.Ct. at 2413.

In *Bush*, the Court was faced with the "elaborate, comprehensive scheme" prom-

---

6. The CSRA divides federal employees into four categories: (1) those in the "competitive service;" (2) those who are "preference eligible;" (3) those in the "excepted" service; and (4) "probationers." *See Harrison v. Bowen*, 815 F.2d 1505, 1510 (D.C.Cir.1987); 5 U.S.C. §§ 2102(a)(2) and 2103. The substantive rights and procedural protections provided a federal employee depend upon the category of his or her employment.

7. (Pub.L. 95–454, 92 Stat. 1111 *et seq. codified as amended*, in various sections of 5 U.S.C. (1982 ed. and Supp. IV).

8. 5 U.S.C. § 7513 provides that certain employees in the competitive service may not be discharged or suspended without a showing of "cause as will promote the efficiency of the service." The statute also provides advance notice of any such action as well as a review procedure.

ulgated under the CSRA. *Id.* at 385, 103 S.Ct. 2415. Similarly, in *Schweiker,* the Court addressed the Social Security Act which it described as "an unusually protective [multi]-step process for the review and adjudication of disputed claims." 108 S.Ct. at 2468 (*quoting Heckler v. Day,* 467 U.S. 104, 106, 104 S.Ct. 2249, 2251, 81 L.Ed.2d 88 (1986)).

In the present case, however, no such extensive legislation exists. As defendant Williams acknowledges, in contrast to Congress' legislation in the area of federal personnel relations generally, "Congress has decided to allow the Judicial Branch to govern its own personnel relations." While Congress did create the Judicial Conference, which in turn mandated that each judicial district implement an EEO plan, this activity is not remotely comparable to the legislative activity apparent in *Bush* and *Schweiker.* Consequently, I do not find that a *Bivens* action should be precluded on the basis that Congress has given careful attention to judiciary personnel relations or on the basis that Congress has provided what it considers adequate remedies. *See Egger v. Phillips,* 710 F.2d 292, 297–98 (7th Cir.) *cert. denied* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983) (exemption from civil service protections is not special factor precluding *Bivens* remedy).

Nor is this case resolved by the assertion that Congress somehow has exclusive province over federal employment matters. While *Bush* held that Congress is best equipped to determine whether the public interest would best be served by creating a remedy for executive branch employees who are improperly disciplined for exercising their First Amendment rights, I do not read *Bush* to necessarily say that the same is true as to judiciary employees. Rather, I conclude that the *Bush* holding was a limited one and that the judiciary is best equipped to understand the ramifications of creating a remedy for judiciary employees who may have been unconstitutionally discriminated against by their superiors. Accordingly, I do not agree that the existence of General Order 15 is a "special factor" precluding the creation of a *Bivens* action.

### 2. Efficiency of the Courts

The second "special factor" proposed by defendant Williams is that the allowance of a *Bivens* action to remedy a constitutional violation would interfere with the close working relationship between a judge and his or her staff which is critical to the efficient functioning of the courts. Williams argues that if confidence is lost in an employee, a judge must be able to remove that employee expeditiously.

A judge's staff is indeed critical to a judge's ability to carry out judicial duties. A confidential relationship is essential in light of the duties required of a judge's personal secretary and law clerks. I do not agree, however, that the creation of a *Bivens* claim in this context is so detrimental as to bring it within the Court's reasoning in *Chappell* or *Stanley.* As noted above, those cases concerned the special nature of military life and the need for unhesitating action by military officers.

The need for a smooth-running court system and the constitutionally recognized need for judicial independence in order to allow decisions to be rendered unfettered by outside forces, is adequately addressed by absolute and qualified immunity. To the degree that decisions fall outside of this immunity, I do not agree that the allowance of a *Bivens* action would so disrupt the personnel relations within the courts as to interfere with the judicial function. Accordingly, I do not find this to be a "special factor."

### 3. Independence of the Judiciary

Defendant Williams' final "special factor" is that the allowance of a *Bivens* action would interfere with the constitutionally recognized independence of federal judges. In this respect, defendant argues that the constitutional protection of federal judges' salaries and tenure establishes a "national policy" of independence which this court should not countervail.

In *Davis,* the defendant was a United States Congressman and, therefore, also entitled to be "shielded from threats to [his] independence" as is argued by defendant Williams. The answer supplied by the Supreme Court to such an argument was

that the Speech or Debate Clause of the United States Constitution provided sufficient protection. 442 U.S. at 235 n. 11, 99 S.Ct. at 2271 n. 11. Similarly, the absolute and qualified immunity provided federal judges is sufficient to protect judges within the "sphere of legitimate" judicial and administrative activity. *Id.; See also Carlson*, 446 U.S. at 19, 100 S.Ct. at 1472. Hence, I do not find that the independence of the judiciary is a "special factor" precluding a *Bivens* claim.

In conclusion, because plaintiff alleges that her constitutional rights were violated by a federal official acting under the color of his authority, I conclude that plaintiff has a cognizable *Bivens* claim. Defendant Williams has failed to show that there are any "special factors" which preclude such a remedy. Accordingly, it must be determined if plaintiff's claims rise to the level of constitutional violations.

Plaintiff contends that defendant Williams' conduct violated her right to privacy, due process, freedom of speech, and freedom of religion. For the reasons set forth below, these claims are dismissed.

### C. *Constitutional Claims*

#### 1. Privacy

 Plaintiff contends that defendant Williams violated her constitutional right to "privacy, as to sexual matters" in the following manner: (1) by sexually harassing plaintiff; (2) by imposing upon plaintiff private, non-governmental duties as a condition of her employment; (3) by attempting to impose upon plaintiff beliefs and practices which were contrary to her religious and "moral" beliefs; and (4) by making critical comment and inquiry regarding plaintiff's religious beliefs and practices.[9]

Defendant Williams moves to dismiss this claim on the basis that the right to privacy does not extend to sexual harassment by a government official. Moreover,

Williams argues that if it does, it is axiomatic that only the state can violate an individual's constitutional rights and that he can only represent the state when acting within his statutory authority. Assuming sexual harassment occurred, Williams argues it could not possibly have occurred within his statutory authority.

In *Otto v. Heckler*, 781 F.2d 754 (9th Cir.1986), a former employee of the Social Security Administration alleged that her supervisor violated her right of privacy by "making defamatory remarks about her sexuality, by following her, telephoning her and placing her in fear of sexual abuse." The court concluded that plaintiff's allegations sounded in tort and did not rise to the level of a constitutional violation. *Id.* at 757. The court noted that the supervisor's conduct was outside the limits of his authority and consequently could not amount to a governmental intrusion into the intimacies of married life.[10] *Id.; See also, Arnold v. United States*, 816 F.2d 1306, 1310–11 (9th Cir.1987).

Based on the reasoning in *Otto v. Heckler*, I conclude that plaintiff's allegations of sexual harassment do not rise to the level of a constitutional violation but rather sound in tort. To the extent plaintiff's allegations regard non-sexual matters, such as intrusion on plaintiff's religious beliefs, they do not support plaintiff's privacy claim. Accordingly, this claim is dismissed.

#### 2. Due Process

Plaintiff contends that her due process rights under the Fifth Amendment were violated by defendant Williams in the following manner: "(i) Taking away plaintiff's property interest in her employment without a fair investigation, hearing, and compensation for damages; (ii) coercing, intimidating, threatening plaintiff with retaliation if she endeavored to exercise her

---

**9.** Plaintiff also contends that defendant Williams' conduct constitutes the tort of invasion of privacy. The validity of this tort claim is discussed in Section III(A)(2).

**10.** Although *Otto* concerned an employee covered by Title VII thereby raising the issue of

whether Title VII was the exclusive remedy, the court affirmed the dismissal of plaintiff's constitutional claims "not because they are precluded by Title VII, but because she has failed to state a claim under *Bivens*."

rights to protect her property interest in her employment; and (iii) engaging in such retaliation against plaintiff."

Plaintiff alleges that while employed by the U.S. District Court, she received "outstanding" and "excellent" performance ratings; received numerous raises and commendations for her work; and was told on many occasions by defendant Williams that she was doing an excellent job. She contends that her position was a "long-term career position." In plaintiff's first amended complaint she alleges a specific conversation wherein defendant Williams stated that while "law clerks come and go," plaintiff and he would "be here forever." She also alleges that defendant Williams made repeated written references to plaintiff "as the only permanent member of his staff."

Defendant Williams moves to dismiss this claim on the basis that plaintiff has no legally-recognized property or liberty interest in her employment. As to the existence of a protectable property interest, Williams contends that government employees who are not covered under any merit or civil service system or by an employment contract have no such interest. As to the existence of a protectable liberty interest, Williams contends that plaintiff has failed to state a claim in that there are absolutely no allegations of an infringement of this interest.

### a. *Property Interest:*

A public employee has a due process property right in continued employment only if the individual has a legitimate claim of entitlement to the position created by "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599–600, 92 S.Ct. 2694, 2698–99, 33 L.Ed.2d 570 (1972).

Plaintiff points to no statutory basis for her claim of a property interest. Rather, her allegations of a constitutionally protected property interest stem from oral and written statements allegedly made by defendant Williams that her secretarial position was "permanent." Accordingly, the existence of a property right is dependent upon a finding of "mutually explicit understandings that support [her] claim of entitlement." *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699.

Defendant Williams cites several cases which do not address what constitutes "mutually explicit understandings" sufficient to create a property interest. Accordingly, I do not find them persuasive.[11] Rather, I find that the resolution of this issue must be reached by examining those cases in which the court was required to examine informal statements and assurances given to an employee.

In *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir.1981), *cert. denied* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), the plaintiff was terminated from his position as a regulatory attorney for the Federal Reserve Bank after eleven years of employment. The statute governing the plaintiff's employment provided that the Federal Reserve Bank could dismiss him "at pleasure." Notwithstanding this language, plaintiff argued that he had a property interest created by mutually explicit understandings with the Bank president. Plaintiff alleged that the president had written him a letter stating that plaintiff would not be terminated so long as his work was satisfactory. *Id.* at 1099.

In holding the assurances inadequate to create a property interest, the court

---

**11.** The holding in *Mareno v. Re*, 568 F.Supp. 17 (S.D.N.Y.), *aff'd* 742 F.2d 1430 (2nd Cir.1983), *cert. denied* 465 U.S. 1046, 104 S.Ct. 1004, 79 L.Ed.2d 236 (1984), for example, involving a Court of International Trade legal assistant, was premised on the finding that 28 U.S.C. § 871 expressly provides that legal assistants are "subject to removal by the court." *Id.* at 20. No such statute exists for U.S. district court law clerks and secretaries. *See* 28 U.S.C. § 752 (1988). Similarly, the holding in *Williams v. McClellan*, 569 F.2d 1031 (8th Cir.1978), wherein the court held that government employees not "covered by any merit or civil service system or by employment contracts" have no property interest, did not involve any type of oral assurances. Hence, the court had no reason to address whether there were any "mutually explicit understandings" creating a property interest.

stressed that by promising plaintiff employment security in excess of that provided by statute, the president was outside of the scope of his authority. *Id.* The court also concluded that because plaintiff was chargeable with knowledge of the statute, he knew that any oral assurances were negated by law. *Id.* at 1100.

In *Sipe v. Fritz*, 43 B.R. 984 (D.C.Ariz. 1984), a similar conclusion was reached. *Sipe* involved a former chief deputy clerk of a U.S. bankruptcy court. The plaintiff alleged that the abolition of her position deprived her of a property interest without due process. She based her assertion of a property interest on four sources: (1) various printed court materials; (2) understandings based on plaintiff's prior employment experience; (3) Administrative Office policy; and (4) her perceptions, and those of others', that she was a career employee who could not be terminated without cause. *Id.* at 993.

In holding that plaintiff did not have a protectable property interest, the court stressed that 28 U.S.C. § 771(b) "makes deputy clerks subject to removal at the will of the clerk acting with the approval of the bankruptcy court." *Id.* The court concluded that any entitlement to continued employment held by plaintiff would have to have arisen "from some agreement, express or implied, by the clerk and the court to relinquish their statutory removal power." *Id.* at 994.

Finally, in *Thomas v. Los Angeles*, 676 F.Supp. 976 (C.D.Cal.1987), the court addressed whether a city employee, exempted from civil service protections, had a property right to continued employment. The plaintiff in that case alleged that he had such a property right on the basis of (1) oral assurances made by the mayor and other city officials that he was a "permanent" employee and would not be arbitrarily discharged; and (2) a department policy of treating all employees, including exempted employees, equally.

The court concluded that the plaintiff had a property interest in his position. In so doing, the court provided an extensive discussion of what constitutes "a mutually explicit understanding" to support a claim of entitlement. Noting that a subjective desire is insufficient, the court recognized that the determination of "when subjectivity ends and mutual understandings begin" is a factually oriented analysis which should be determined by the totality of the circumstances. *Id.* at 981.

In recognizing the plaintiff's property interest, the *Thomas* court was careful to delineate the narrowness of its ruling. First, the court noted that oral assurance will not create a property interest if made by an official without actual or at least apparent authority to do so. *Id.* at 981–82. Second, oral assurance will not create a property interest if they are in direct conflict with a specific statute delineating the status of the employment relationship.[12] *Id.* at 982.

The present case does not precisely fit within any of the above rulings. After reviewing the extensive *factual* allegations contained in plaintiff's first amended complaint, however, I conclude that plaintiff's allegations do not rise to the level of "mutually explicit understandings" contemplated by the Supreme Court in *Perry v. Sinderman,* or found to exist by the district court in *Thomas.* While there is no explicit statutory language expressly providing that plaintiff is removable by the court (*See* 28 U.S.C. § 752 (1988)), plaintiff's allegations of defendant Williams' statements do not indicate any explicit understanding that she would only be fired for cause as in *Thomas* but rather involve vague, informal statements made by defendant Williams. Any subjective understandings plaintiff may have had as to the permanency of her position do not support a property interest. Accordingly, plaintiff's due process claim, to the extent it is based on a property right, is dismissed.

**12.** As to this factor, the court noted that while plaintiff "was considered an exempt employee, there was no statute forbidding the City or its representatives to provide added job security to its employees." 676 F.Supp. at 983.

### b. *Liberty Interest:*

■ In *Bd. of Regents,* the Court held that the dismissal of an employee may violate that individual's liberty interest if (1) the "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him;" or (2) the government employer imposes "a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. 2707. Unpublished accusations do not infringe constitutional liberty interests because they do not injure the individual's name nor impose a stigma. *E.g., Bollow,* 650 F.2d at 1101.

In *Bollow,* the Ninth Circuit elaborated on the necessary showing to establish a liberty infringement:

> This court has described the stigma that infringes liberty interests as that which *"seriously* damages a person's reputation or *significantly* forecloses his freedom to take advantage of other employment opportunities...." Subsequent panels have set the boundary of liberty interests at accusations of "moral turpitude," such as dishonesty or immorality.... Thus, ... it was held that dismissal for reasons of incompetence and inability to "get along" with co-workers did not infringe liberty interests.

*Id.* (emphasis in original); *See also Clemente v. United States,* 766 F.2d 1358, 1366 (9th Cir.1985) *cert. denied* 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986); *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 364 (9th Cir.1976).

In the present case, there are no allegations to support a claim for the infringement of a liberty interest. The general allegations of the complaint affirmatively establish this conclusion because plaintiff specifically alleges that defendant Williams portrayed her departure as "voluntary" and related to her "aged" mother, the "burdensome new commute to San Jose," and

"the friction she caused with the law clerks."

Accordingly, plaintiff's due process claim is dismissed in its entirety.

### 3. Freedom of Speech

■ Plaintiff contends that defendant Williams violated her right to free speech in the following manner: "(i) Suppression of plaintiff's right to speak out to the auditors about the extent of the FJA work she was being forced to do; (ii) suppression of plaintiff's right to administratively pursue or otherwise speak out about the real reasons her employment was being terminated; and (iii) suppression of plaintiff's right to speak out about the sexual harassment which began in 1976."

Defendant Williams moves to dismiss this claim on the basis, *inter alia,* that plaintiff has failed to allege an adverse employment consequence as a result of speaking out. Williams argues that plaintiff's claim is defective in that it does not allege that plaintiff ever spoke out prior to his decision to terminate her employment. Plaintiff offers no argument in opposition.

It is well established that government employment may not be conditioned upon the relinquishment of First Amendment rights.[13] *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *See also Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) (in defining First Amendment protections, courts must arrive at balance between interests of employee in commenting on matters of public concern and interests of public employer in promoting efficiency of public services it performs). In order to establish a First Amendment claim, a public employee has the initial burden of showing that he or she engaged in protected activity and that the activity was a substantial or motivating factor in the decision or action taken against the employee. *Mt. Healthy City*

---

**13.** Not all speech by public employees is protected. Only speech "on a matter of public concern" need be scrutinized when it is the basis of an adverse employment decision. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials ... enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690.

*School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The defendant-employer may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the employment action would have been taken in the absence of the protected activity. *Id.*

Plaintiff's First Amendment claim fails the first step of the *Mt. Healthy City School Dist.* test; that is, she has not alleged that she engaged in any protected speech. Rather, she asserts that she did not engage in any speech either at the workplace or elsewhere. Accordingly, plaintiff has failed to state a claim.

### 4. Freedom of Religion

■ Plaintiff contends defendant Williams violated her First Amendment right to the free exercise of religion. Plaintiff alleges that she is involved in the Charismatic Renewal Movement within the Roman Catholic Church and that her religious practices include singing prayers in chants. Plaintiff contends, however, that while at the workplace her religious practices were limited to silent prayer before meals and an "endeavor to exercise her right to observe and adhere to her strongly held life-long beliefs in, and commitment to, chastity and honesty." Plaintiff alleges that defendant Williams had a disdain and contempt for her religious practices and that such practices substantially contributed to, and proximately resulted in his decision to terminate her employment.

Defendant Williams moves to dismiss this claim on the basis that plaintiff alleges that she never engaged in religious chanting on the job. Williams concludes that in the absence of an allegation that she chanted at work, an adverse employment decision could not have affected her religious practices. In regard to the allegation that plaintiff's religious beliefs were interfered with by being exposed to certain immoral and illegal activity, Williams argues that

the First Amendment cannot be violated on the basis of such an "exposure."

As noted above, public employees may establish a claim for relief if their employer's decision to discharge them is "made by reason of [their] exercise of constitutionally protected First Amendment freedoms." *Mt. Healthy City School Dist.,* 429 U.S. at 283, 97 S.Ct. at 574 (*citing Perry,* 408 U.S. 593, 92 S.Ct. 570). The relevant inquiry in the present case, therefore, is whether plaintiff engaged in religious chanting and prayer and whether this activity was a substantial or motivating factor in defendant Williams' decision to terminate her employment. *Id.* 429 U.S. at 287, 97 S.Ct. at 576. Plaintiff has alleged both elements. Under *Mt. Healthy City School Dist.,* defendant Williams may defeat plaintiff's claim by establishing that he would have reached the same decision in the absence of the protected conduct.

Defendant Williams has failed to cite any authority for the proposition that plaintiff's claim is defeated due to the failure to allege that she engaged in the protected activity at the workplace. In the absence of such authority, I reject the contention due to the fact that the Supreme Court's rulings in this area do not focus on the protection of First Amendment freedoms in the workplace but rather on the right not to have public employment conditioned upon the giving up of a constitutionally protected freedom.[14] *See Connick,* 461 U.S. at 142, 103 S.Ct. at 1687. Accordingly, I see no reason to add the requirement that the protected activity occur at the workplace. The constitutional infringement or burden is pled when it is alleged that the employment action was taken as a result of the protected activity.

Defendant Williams' motion to dismiss this claim, on the basis that plaintiff did not engage in religious chanting at work, is denied. Defendant Williams' motion to dis-

---

**14.** While I agree it may be difficult to prove that plaintiff's religious practice of chanting was a motivating factor for her discharge when she did not engage in such activity at work, I do not agree that this defeats plaintiff's claim at the pleading stage. *See Bush v. Johnson,* 607

F.Supp. 96 (D.C.Tenn.1985) (plaintiff could prevail on First Amendment claim if he proved by a preponderance of evidence that he was not rehired because of his *failure* to attend his supervisor's church). *But see,* Qualified Immunity, Section I(D).

miss is granted to the extent that plaintiff alleges that her First Amendment rights were violated by exposure to immoral, dishonest or unchaste behavior.[15] This claim ultimately fails in its entirety, however, under the ruling in *Gutierrez v. Mun. Court of the Southeast Judicial Dist.*, 838 F.2d 1031 (9th Cir.1988), as is discussed in Section I(D) below.

### D. Qualified Immunity

■■ Defendant Williams asserts that plaintiff's constitutional claims, including her freedom of religion claim, are barred by the doctrine of qualified immunity. Plaintiff disagrees, arguing that Williams has not satisfied the prerequisites of the doctrine.

In *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the Court clarified that a judge is not absolutely immune from liability arising out of personnel decisions. The Court held, however, that the doctrine of qualified immunity may be applicable so long as the judge is acting in his or her administrative capacity. *Id.* 108 S.Ct. at 545. In order for the qualified immunity to apply in any context, the official's conduct must be objectively reasonable and not in violation of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982); *See also, Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (applicability of qualified immunity turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were clearly established at the time it was taken).

In order for a law to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 107 S.Ct. at 3039. In *Anderson*, the Court explained that the question is not merely whether the general constitutional right in question was clearly established, but whether the conduct was *objectively* reasonable under the facts of the particular case and in light of the constitutional right allegedly violated. *Id.* at 3040.

*Gutierrez* involved the applicability of qualified immunity in the context of a constitutional discrimination case. The court concluded that qualified immunity is no defense where the plaintiff must prove unlawful motive or intent. 838 F.2d at 1051.

The court explained that in an employment discrimination case, the act of discharging an employee is "neutral," and that it is the motive and intent that makes the act both actionable and violative of clearly established law. *Id.* The court, relying on *Martin v. D.C. Metropolitan Police Department*, 812 F.2d 1425 (D.C. Cir.1987) concluded:

> [W]here unlawful intent or motive is an essential element of the challenged conduct, the act cannot be analyzed apart for the actor's intent and the court *must* consider that intent in determining whether the defense of qualified immunity is available.
>
> \* \* \* \* \* \*
>
> We hold, along with the District of Columbia Circuit, that where the lawfulness of a challenged act is dependent upon the actor's motive or intent, the purpose for which the act was undertaken must be analyzed and not just the act itself. We also hold that in deciding whether a defendant is entitled to qualified immunity in cases in which unlawful motive is a critical element, the court must consider the actor's intent in carrying out the act that is alleged to have resulted in the violation of the plaintiff's rights.... [Q]ualified immunity is not a defense in cases involving intentional racial or other similar discrimination, including national origin.

*Id.*

By way of footnote, the court explained that "if the plaintiff fails to establish that the discrimination was intentional, the

---

**15.** Under this holding, paragraphs 24(c)(i) and (ii) of the second amended complaint are stricken.

claim fails. If the plaintiff does establish such intent, there can be no qualified immunity." *Id.* at 1051 n. 29. The court concluded that "it seems simpler to say that qualified immunity is not a defense in such cases, rather than that the defense prevails where proof of intentional discrimination is not established." *Id.*

In the present case, in order to establish her freedom of religion claim, plaintiff must show that defendant Williams' action of discharging her was motivated or substantially caused by her religious practices. *Mt. Healthy City School Dist.*, 429 U.S. at 287, 97 S.Ct. at 576; *See also, Martin*, 812 F.2d at 1432. Just as in *Gutierrez*, the act of discharging plaintiff is neutral. It becomes unconstitutional only if plaintiff proves that defendant Williams' motivation was retaliatory. Consequently, I conclude that qualified immunity is not a defense in this case.

■■■ The holding in *Gutierrez*, however, did not end with a denial of qualified immunity. Instead, the court went on to discuss its concern over the impact of its decision. The court concluded that by eliminating qualified immunity in constitutional cases requiring unlawful motive or intent, a plaintiff "might allege facts demonstrating that defendants have acted lawfully, append a claim that they did so with an unconstitutional motive, and as a consequence usher defendants into discovery, and perhaps trial, with no hope of success on the merits." *Id.* at 1051 (*quoting Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984) *cert. denied* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985)). Consequently, the court concluded that such plaintiffs must allege nonconclusory allegations setting forth the *evidence* of unlawful intent. *Id.* at 1052; *See also, Hobson*, 737 F.2d at 30–31 (mere conclusory allegations of unconstitutional motive, devoid of factual support must be found lacking and be dismissed). In the present case, plaintiff has failed to do so.

It is beyond dispute that plaintiff has pled a multitude of factual allegations in her first and second amended complaints. Under her freedom of religion claim, how-

ever, she has failed to allege evidence which could support a finding of unlawful intent. Plaintiff alleges:

Plaintiff believes, and therefore alleges, that JUDGE WILLIAMS considered, and considers, alleged "conversations with herself or imaginary people" and "speaking to people who were visible only to herself" as partial justification for firing plaintiff. This sentiment was voiced by *one or more of his law clerks*, and JUDGE WILLIAMS, *by counsel*, has gone to great lengths to publicly admit, proclaim, and contend that such was partial justification for firing plaintiff.

\* \* \* \* \* \*

Plaintiff never, ever, chanted or prayed aloud during her work or at her workplace, or in any way allowed her aforesaid religious belief and practice to interfere with her work performance or the performance of others.

\* \* \* \* \* \*

Plaintiff believes, and therefore alleges, that defendant SPENCER WILLIAMS had, and has, contempt, disdain, and disrespect for her exercise of the aforesaid religious practices and believes, as manifested by his actions alleged in his [sic] Complaint, that her exercise of one or more of the aforesaid religious practices and beliefs was a factor discussed and considered by SPENCER WILLIAMS in deciding to fire plaintiff ... and all such events substantially contributed to, and proximately resulted in, SPENCER WILLIAMS' decision to fire plaintiff.

Plaintiff's allegations of discriminatory intent merely recite statements made by defendant Williams' counsel which were quoted in newspaper articles. Plaintiff attached the newspaper articles to her complaint. The relevant statement appears, in context, as follows:

Garcia was fired because she did not get along with law clerks during her 15 years on the job. Kaus [defendant Williams' counsel] said. "She's a very difficult person," he said. Garcia would have conversations with herself or with

imaginary people, Kaus said, and she was prone to hiding things, such as other people's paychecks.

The above statement, if assumed to be relevant to plaintiff's claim, is not attributable to defendant Williams nor does it purport to represent Williams' sentiments. Moreover, any statements made by law clerks would similarly not be attributable to defendant Williams absent some allegations that the law clerk(s) had knowledge of defendant Williams' intent in terminating plaintiff's employment. Plaintiff makes no factual allegations regarding any statements or actions on the part of defendant Williams to support a claim of discriminatory intent. This is particularly critical in light of her allegation that she did not practice her religious chanting at the work place.

Consequently, I conclude that plaintiff has failed to state any nonconclusory allegations of evidence of unlawful intent. Accordingly, this claim is dismissed.

## II. WRONGFUL TERMINATION GROUNDED IN EEO VIOLATIONS

■ In claims five, six and eight, plaintiff alleges that defendant Williams violated General Order 15 by discriminating against her on the basis of sex, handicap, and religion. In claim seven, plaintiff alleges that defendant Williams violated General Order 15 by discriminating against her in retaliation for her pursuance of administrative remedies.

Defendant Williams moves to dismiss these claims on the basis of lack of jurisdiction. Williams argues that General Order 15 does not expressly create a private right of action, that there is no inferable congressional intent to allow damages under General Order 15, and that sovereign immunity would bar the action in the event that there were such intent. I agree.

In plaintiff's complaint, she asserts that jurisdiction over her EEO claims is proper pursuant to 28 U.S.C. § 2680 and 28 U.S.C.

§ 2071. Neither of these statutes provides this court with federal question jurisdiction. 28 U.S.C. § 2680 sets out the *exceptions* to the liability of the United States relating to tort claims. This statute can in no way be interpreted as a jurisdictional grant. 28 U.S.C. § 2071 is similarly inapposite. That statute provides federal courts the statutory power to prescribe rules "for the conduct of their business." It does not create any substantive rights nor enlarge this court's jurisdiction.

Plaintiff has failed to assert any basis for this court to exercise jurisdiction over her EEO claims. Accordingly, they are dismissed.

## III. STATE COMMON LAW TORTS

Plaintiff sets forth four state common law tort claims against defendant Williams and six state common law tort claims against defendant Williams and defendant FJA. The claims asserted solely against defendant Williams are sexual harassment, invasion of privacy, assault and battery and defamation. The claims asserted against both defendants are misrepresentation, fraud, intentional infliction of emotional distress, negligence, tortious interference with employment relationship and strict liability.

### A. *State common law tort claims against defendant Williams*

#### 1. Sexual Harassment

■ Plaintiff alleges that defendant Williams had a duty to exercise ordinary care to avoid tortious sexual harassment of plaintiff and that he breached this duty in the same manner as asserted under her privacy claim.[16] Plaintiff now concedes that defendant Williams' alleged sexual harassment is not a tort in and of itself but rather is actionable under California tort law as invasion of privacy, assault and battery and false imprisonment. Accordingly, plaintiff's claim for "tortious sexual harassment" is dismissed.

---

**16.** At the oral argument of this motion, the court requested that the parties further brief plaintiff's state law claims, setting forth the essential elements for each claim and any argu-ment as to the sufficiency of pleading. Thus, many of the contentions discussed at this juncture were raised through this supplemental briefing.

## 2. Invasion of Privacy

■ Plaintiff alleges that defendant Williams had a duty to avoid tortious invasion of plaintiff's privacy and that he breached this duty in the same manner as asserted under her privacy claim.[17]

The parties agree that as to any claim of invasion of privacy not involving physical intrusion, the tort requires public disclosure. *Maheu v. CBS, Inc.*, 201 Cal.App.3d 662, 247 Cal.Rptr. 304, 311 (1988) (elements of invasion of privacy include (1) public disclosure of (2) private facts which are (3) offensive and objectionable to a reasonable person of ordinary sensibilities). Defendant Williams contends that plaintiff has not pled such a disclosure. I agree. Consequently, to the extent that plaintiff relies upon non-physical intrusions to support her privacy claim, including the allegations in paragraphs 25(c)(i), (iv), (vi) and (vii) of the Second Amended Complaint, the allegations are stricken.[18]

■ Second, Williams asserts that as to any claim of invasion of privacy involving physical intrusion, the tort is time-barred. The applicable statute of limitations is one year from the accrual of the action. Cal. Code Civ.Proc. § 340(3) (West 1982);[19] *Maheu*, 247 Cal.Rptr. at 312. Williams notes that plaintiff's complaint was filed on December 30, 1987, having already received the benefit of a 60 day tolling period by stipulation. Consequently, any physical intrusion, to be the basis of this claim, must have occurred after October 30, 1986.

Defendant Williams, in reference to plaintiff's First Amended Grievance Statement attached to the First Amended Complaint, characterizes the allegations of physical intrusion as one incident in 1976 and another incident in 1978 or 1979. I do not agree that this is a correct characterization of plaintiff's allegations.

To the extent that plaintiff's allegations arise out of the alleged incident at the Hilton Hotel in 1976, the allegations are stricken as time-barred. Similarly, the allegations which arise from incidents occurring in 1978 and 1979 are stricken. Many allegations, however, do not appear to be tied to a particular year and are of a continuing nature. Consequently, these allegations remain and the claim is not dismissed in its entirety. Williams may re-raise this motion as to the remaining allegations after discovery.

## 3. Assault and Battery

■ Plaintiff alleges that defendant Williams committed the tort of assault and battery by "touching plaintiff's private parts in a sexual way, including one overt physical attempt to force plaintiff to go to bed with him." For the same reasons as noted above, the allegation regarding an alleged attempt in 1976 to force plaintiff to go to bed with him is stricken as time-barred.

Because plaintiff does not depend entirely upon the incident occurring in 1976, but alleges that this was one of several incidents, the claim is not subject to a motion to dismiss in its entirety. Defendant Williams may re-raise his assertion that the entire claim is time-barred after discovery.

## 4. Defamation

■ Plaintiff alleges that defendant Williams defamed her in the following man-

---

17. California courts have categorized this tort into four distinct forms of intrusion: (1) unreasonable intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs; (2) publicity which places the plaintiff in a false light; (3) public disclosure of true, embarrassing private facts about the plaintiff; and (4) appropriation of plaintiff's name or likeness for commercial purposes. *Porten v. University of San Francisco*, 64 Cal.App.3d 825, 828, 134 Cal. Rptr. 839 (1976); *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal.App.3d 880, 887, 118 Cal.Rptr. 370 (1974). Although not specified, plaintiff's claim appears to be one of unreasonable intrusion.

18. Paragraph 25(c)(v), regarding the imposition of nongovernmental duties, is also stricken on the basis that it does not support an intrusion of privacy claim.

19. Cal.Code Civ.Proc. § 340(3) provides that the following actions shall be brought within one year:

An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another....

ner: "(i) Falsely stating to others that plaintiff's work for the FJA was voluntary; (ii) falsely making remarks to others implying that plaintiff was romantically interested in the judge; (iii) falsely making remarks that plaintiff had stolen a light bulb or paycheck at work."

Under California law, slander is a false and unprivileged publication which:

1. Charges any person with a crime, or with having been indicted, convicted, or punished for a crime;

2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

3. Tends to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

4. Imputes to him impotence or a want of chastity; or

5. Which, by natural consequence, causes actual damage. Cal.Civ.Code § 46 (West 1982).

The determination of whether a statement is defamatory is a question of law in the first instance. *Scott v. McDonnell Douglas Corp.*, 37 Cal.App.3d 277, 289, 112 Cal.Rptr. 609 (1974). The relevant inquiry for the court is whether the statement could reasonably be considered defamatory. *Id.* Where the statement is susceptible to an innocent meaning, the plaintiff must allege by way of innuendo that the statement was understood in its derogatory sense. *Okun v. Superior Court of Los Angeles County*, 29 Cal.3d 442, 450, 175 Cal.Rptr. 157, 629 P.2d 1369, *cert. denied* 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981).

Defendant Williams moves to dismiss the allegation that plaintiff did FJA work voluntarily, on the basis that it is not susceptible of a defamatory meaning. For the following reasons, I agree.

If FJA work is a proper assignment for a Judge's confidential secretary, then there is nothing defamatory about the statement that she did it voluntarily. Consequently, plaintiff must allege by way of innuendo that the assignment of FJA work was improper or unlawful so as to show that her voluntary acceptance of such tasks imputes a lack of integrity or dishonesty.

In paragraphs seven, eight and twelve of the Second Amended Complaint, plaintiff appears to allege that defendant Williams' insistence that she do FJA work violated 18 U.S.C. § 641. Section 641 is the general provision making theft or conversion of government property unlawful.

Under Canon 4 of the Code of Conduct for United States Judges, "a judge may engage in activities to improve the law, the legal system, and the administration of justice." While a judge is not to use "in any substantial degree judicial chambers, resources, or staff to engage in activities permitted by this Canon," it "remains the responsibility of each judge to make the final determination regarding what uses of chambers are and are not substantial." Advisory Committee On Codes of Conduct Advisory Opinion No. 79 (May 6, 1987).

In light of the fact that defendant Williams is authorized to use chamber resources and staff in activities such as the FJA, I conclude that his statement that plaintiff did FJA work voluntarily is not reasonably susceptible to a defamatory meaning. Moreover, I do not feel that § 641 was intended to address this issue and I find it irrelevant to plaintiff's charge of defamation. Accordingly, this allegation is stricken.

■ Defendant Williams also moves to dismiss plaintiff's second allegation regarding the statement that she was romantically interested in him. Williams asserts that this allegation is too broad and unsupported to state a claim. This motion is denied. Under California law, slander may be alleged by setting forth the substance of the defamatory statement. "Less particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable prepara-

tion of a defense." *Okun*, 29 Cal.3d at 458, 175 Cal.Rptr. 157, 629 P.2d 1369.

■ Finally, defendant Williams moves to dismiss plaintiff's allegation regarding a stolen light bulb and paycheck on the basis that there is no allegation that the statement was ever published. This motion is granted. While plaintiff alleges generally that all of the alleged defamatory statements were published, plaintiff specifically alleges the incident in which this third statement was made in paragraph twelve of the Second Amended Complaint:

> On September 5, 1986, JUDGE WILLIAMS called plaintiff into his office, without any previous warning, and told her, in a rambling and lengthy conversation which he taped simultaneously on two tape recorders, that she had caused friction with the law clerks; in particular he recited a list of accusations against her, the most serious of which were that she had hidden one law clerk's light bulb and that a year earlier she had hidden another law clerk's paycheck.

Accordingly, because plaintiff alleges that this statement was made to her as opposed to being published to a third person, the allegation is stricken.

B. *State common law tort claims against defendant Williams and FJA*

1. Misrepresentation/Fraud

Plaintiff alleges that defendant Williams falsely represented (1) that FJA work assigned to her was within his authority and would not cause her detriment; (2) that she had no right to complain about FJA work and its contribution to the termination of her employment; (3) that her secretarial position was being eliminated because of his reduced work load; (4) that she had no right to have a hearing regarding her termination; and (5) that her employment was permanent.[20] Defendant FJA is alleged to be vicariously liable for the first two misrepresentations only.

■ The elements of a cause of action for fraud are: (1) a misrepresentation of material fact; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) resulting damage. *Cicone v. URS Corp.*, 183 Cal. App.3d 194, 200, 227 Cal.Rptr. 887 (1986); *Hilliard v. A.H. Robins Co.*, 148 Cal.App. 3d 374, 414–15, 196 Cal.Rptr. 117 (1983); *See also* Cal.Civ.Code §§ 1709 and 1710 (West 1985).

■ The first alleged misrepresentation fails to state a claim because it is not false. As noted above, it is within the discretion of a United States judge to use chamber resources and staff on activities permitted under Canon 4 of the Code of Judicial Conduct. Accordingly, the fact that defendant Williams represented to plaintiff that FJA work assigned to her was within his authority and would not cause her detriment does not state a claim for misrepresentation.

■ The second alleged misrepresentation fails to state a claim because there is no allegation of detrimental reliance. As noted at length above, plaintiff's employment is not covered by the CSRA. Under General Order 15, plaintiff had the right to grieve any discriminatory treatment. Plaintiff alleges that she did in fact pursue her rights under General Order 15. Accordingly, to the extent that she could grieve the assignment of FJA work, she did so. Consequently, plaintiff did not forego any potential forum or the "right to complain" on the basis of defendant Williams' representations.

Similarly, the third, fourth, and fifth alleged misrepresentations fail to state a claim because there is no allegation of detrimental reliance. As to the representation that her position was being eliminated because of reduced work load, there is absolutely no allegation that plaintiff either believed this or that she relied upon it. As to the representation that she had no right to a hearing regarding her termination, plaintiff affirmatively alleges that she pursued her EEO remedies, which included a

---

**20.** Plaintiff concedes that her claim for fraud may be combined with her claim for misrepre- sentation. Accordingly, claims thirteen and sixteen are addressed together.

hearing before the Chief Judge of the district court. Finally, as to the representation that her employment was permanent, plaintiff fails to allege any detrimental reliance apart from perhaps a subjective belief that she had a property interest in her position.

Based on the foregoing, plaintiff claims for misrepresentation and fraud are dismissed in their entirety.

### 2. Intentional Infliction of Emotional Distress

Plaintiff alleges that defendants Williams and FJA intentionally inflicted emotional distress in the following manner: "(i) Causing plaintiff to have to be torn between her legitimate government duties and the work for the FJA; (ii) precluding plaintiff from talking to the auditors about the FJA work; (iii) giving plaintiff a very negative reference letter upon her refusal to accept a reference letter which falsely depicted her work for the FJA as having been voluntary; (iv) suppressing, through coercion, intimidation, and threats of retaliation, plaintiff's right to pursue administrative remedies over the FJA's excessive use of her for its work, and how such FJA work substantially contributed to her termination."

In addition, plaintiff alleges that defendant Williams alone, intentionally inflicted emotional distress through "(i) Humiliating and frightening offensive touching of plaintiff; (ii) frequent demented tirades of obscenities directed personally at plaintiff, (iii) threats to give plaintiff's prospective employers a bad recommendation and to hinder plaintiff's entitlement to early retirement benefits if plaintiff exercised her right to contest her termination; and (v) subjecting plaintiff to sordid details about the judge's sex life."

 In order to state a claim for the intentional infliction of emotional distress, plaintiff must allege the following: (1) outrageous conduct by the defendant; (2) an intent to cause, or a reckless disregard of the probability of causing, emotional distress; (3) the suffering of severe emotional distress by plaintiff; (4) actual and proximate causation. *Davidson v. City of West-*

*minister,* 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982).

Whether conduct is "outrageous" is initially a question for the court. *Godfrey v. Steinpress,* 128 Cal.App.3d 154, 173, 180 Cal.Rptr. 95 (1982). Outrageous conduct is defined as conduct that exceeds all bounds of that usually tolerated in a civilized society. *Davidson,* 32 Cal.3d at 209, 185 Cal.Rptr. 252. It does not include "mere insults, indignities, threats, annoyances, petty oppressions and other trivialities." *Agarwal v. Johnson,* 25 Cal.3d 932, 946, 160 Cal.Rptr. 141, 603 P.2d 58 (1979) (*quoting* Restatement (Second) of Torts, § 46 comment d).

Outrageous conduct may arise from an abuse of a special relationship between the plaintiff and defendant. *Bundren v. Superior Court,* 145 Cal.App.3d 784, 791 n. 8, 193 Cal.Rptr. 671 (1983); *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498 n. 2, 86 Cal.Rptr. 88 (1970). In the employment context, California courts have found outrageous conduct when an unfair termination is accompanied by abuse, harassment or demeaning and humiliating acts. *Id.* at 498–99, 86 Cal.Rptr. 88; *Toney v. State,* 54 Cal.App.3d 779, 789, 126 Cal.Rptr. 869 (1976).

 Based on the foregoing caselaw, I conclude that plaintiff has not alleged sufficient facts to establish that the conduct of defendants Williams and FJA, in regard to their insistence that she do FJA work and that she not discuss or complain of such work, was extreme and outrageous. On the other hand, plaintiff's allegations directed solely against defendant Williams do allege facts sufficient to allow a trier of fact to conclude that his conduct was extreme and outrageous. Accordingly, this claim is dismissed in its entirety as to defendant FJA and partially dismissed as to defendant Williams.

### 3. Negligence

 In plaintiff's supplemental brief regarding her state claims, she contends that her fifteenth claim for relief is one for the negligent infliction of emotional distress.

She contends that defendants Williams and FJA breached their duty "to avoid causing harm to the health, safety, and financial wellbeing [sic] of plaintiff" by assigning excessive FJA work and by treating plaintiff as a defacto FJA employee. She contends that defendant Williams further breached this duty by failing to inform her of her right to administrative review and by assigning her duties beyond her legitimate governmental duties. This claim is dismissed for the following reasons.

In *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), the California Supreme Court held that "direct victims" of a defendant's negligence may bring an action for the negligent infliction of emotional distress. Such a claim is a variant of the tort of negligence and requires proof of duty, breach, causation and damages. *Slaughter v. Legal Process & Courier Serv.*, 162 Cal.App. 3d 1236, 1249, 209 Cal.Rptr. 189 (1984).

In order to state a claim for negligent infliction of emotional distress, the risk of severe emotional distress must be reasonably foreseeable. *Molien*, 27 Cal.3d at 923, 167 Cal.Rptr. 831, 616 P.2d 813. Consequently, the plaintiff must plead sufficient allegations of fact which would reasonably elicit a serious emotional response. *Accounts Adjustment Bureau v. Cooperman*, 158 Cal.App.3d 844, 847–48, 204 Cal. Rptr. 881 (1984). (foreseeability of severe emotional distress may be tested at pleading stage). Plaintiff has failed to do so.

Plaintiff's allegations center around the assignment of FJA work. Assuming that such work was extensive and burdensome, such allegations do not support a finding that *severe* emotional distress was reasonably foreseeable as a result. Similarly, assuming that defendant Williams had a duty to inform plaintiff of her rights under General Order 15, the failure to do so would not reasonably elicit a serious emotional response. Accordingly, this claim is dismissed.

### 4. Strict Liability

Plaintiff concedes that there is no authority allowing a strict liability claim under the facts of this case. Accordingly, this claim is dismissed.

### C. *Summary of State Tort Claims*

In summary, the following claims are dismissed in their entirety: tortious sexual harassment; misrepresentation; fraud; negligent infliction of emotional distress; and strict liability. The only remaining claim against defendant FJA is the intentional interference with an employment relationship. The remaining claims against defendant Williams, to the extent they remain under the above rulings, are intentional interference with an employment relationship; invasion of privacy; assault and battery; defamation; and intentional infliction of emotional distress.

Consequently, the final inquiry is whether defendant Williams, as a U.S. District Judge, is absolutely immune from such claims and if not, whether defendant FJA is vicariously liable for the interference claim.

### D. *Absolute Immunity*

■ Defendant Williams contends that to the extent the state tort claims arise out of discretionary acts performed in his official capacity, he is absolutely immune from liability. Thus, Williams argues that any of plaintiff's state tort claims arising out of the termination of her employment are necessarily precluded.

In *Westfall v. Erwin*, 484 U.S. 293, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988), the Court held that absolute immunity is available to public officials when their conduct is within the scope of their official duties and the conduct is discretionary in nature. Consequently, to the extent that the remaining state tort claims fall within this holding, defendant Williams is immune from liability.

As noted earlier the remaining tort claims against defendant Williams are intentional interference with an employment relationship; invasion of privacy; assault and battery; defamation; and intentional infliction of emotional distress. Only the first claim, interference with an employment relationship, is within the scope of

defendant Williams' official duties.[21] Due to the nature of plaintiff's allegations, I conclude that the remaining claims arise out of conduct beyond the outer perimeter of his official duties.

Consequently, plaintiff's claim for intentional interference with an employment relationship is dismissed on the basis of absolute immunity. Because defendant Williams is immune from liability as to this claim, defendant FJA cannot be held vicariously liable. Accordingly, the claim is also dismissed as to defendant FJA.

## IV. CONCLUSION

Plaintiff's *Bivens* claims regarding the right to privacy, due process, and freedom of speech are dismissed for failure to state a claim. Similarly, plaintiff's *Bivens* claim regarding freedom of religion is dismissed for failure to state a claim because it lacks sufficient allegations of evidence of an unlawful intent or motive under *Gutierrez*. Plaintiff's EEO claims are dismissed for lack of jurisdiction. Plaintiff's state tort claims for sexual harassment, misrepresentation, fraud, negligent infliction of emotional distress and strict liability are dismissed for failure to state a claim. Plaintiff's claims of invasion of privacy, defamation and intentional infliction of emotional distress are dismissed in part. Finally, plaintiff's claim for intentional interference with an employment relationship is dismissed on the basis of absolute immunity.

Consequently, defendant FJA's motion to dismiss # 35 is GRANTED. Defendant Williams' motion to dismiss # 32 is GRANTED IN PART AND DENIED IN PART. Plaintiff is allowed twenty (20) days to file an amended pleading.

---

**21.** In this claim, plaintiff alleges that defendants Williams and FJA interfered with her employment relationship with the United States Government by compelling her to do FJA work and suppressing her concern about the propriety of doing such work on government time.